**M. Philip AMODEO**

v.

**Sidney R. FRANCIS, Jr. et al.**

Supreme Judicial Court of Maine.

Submitted on Briefs June 26, 1996.

Decided Aug. 7, 1996.

---

Peter R. Roy, Roy, Beardsley & Williams, Ellsworth, for plaintiff.

Frank B. Walker, Ellsworth, for defendants.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, and RUDMAN, JJ.

RUDMAN, Justice.

M. Philip Amodeo, personal representative of the estate of Roscoe Hatch, Jr., appeals from the judgment entered after a non-jury trial in the Superior Court (Hancock County, *Marsano, J.*) declaring that no implied easement exists across the Swan's Island property of Sidney R. Francis, Jr. and his sister Emilie Francis Cushman to provide access from the nearest public road to shore property owned by the Hatch estate. Amodeo argues that the estate's property is landlocked and that an implied easement was created when the parcel now owned by the estate originally was separated and conveyed from a larger property. We affirm the judgment.

In 1899 Sylvia Stockbridge inherited a large piece of Swan's Island property situated between a town road and the eastern shore of the island. In 1920 she conveyed to Mary Gray Hatch a small portion of that land with shore frontage and a right of way to provide access from the town road across Stockbridge's remaining land. In 1921 Mary Gray Hatch conveyed the shore lot and right of way to Roscoe Hatch, Sr.

In 1924 Stockbridge conveyed a lot of land on the shore directly north of Roscoe Hatch, Sr.'s lot to Sophie Lytle Hatch, Roscoe Hatch, Sr.'s wife. In 1936 Roscoe Hatch, Sr. conveyed his lot with its deeded right of way to his wife, who now owned a double shore lot with deeded access to the public road.

Meanwhile, in 1927, Stockbridge had conveyed a lot on the shore directly south of the Hatch lots to George and Isabel Briggs. The Stockbridge–Briggs deed includes no grant of a right of way. The right of way to the Hatch lots, however, runs along the boundary between the Hatch lots and the Briggs lot. In 1956 George Briggs, Isabel having died and left George her sole heir, conveyed the Briggs lot to Roscoe Hatch, Jr. For

several years the Hatches, mother and son, owned the abutting shore lots with the right of way deeded to the original shore lot running along the boundary between them. Then, some time after 1966, Sophie Lytle Hatch conveyed her double lot, including the deeded right of way, to Alice P. Francis.

Francis already owned the land abutting on the south and west the lot that had been owned by the Briggs and now was owned by Roscoe Hatch, Jr. because in 1948 Sylvia Stockbridge had conveyed to Francis the property extending from the Briggs lot to the town road. When Alice P. Francis acquired Sophie Lytle Hatch's property, therefore, Roscoe Hatch, Jr.'s parcel, bounded on the east by the Atlantic Ocean, became surrounded on the other three sides by property owned by Francis.

In 1964 Sylvia Stockbridge's daughter conveyed to Alice P. Francis another large parcel of land over which a significant portion of the right of way to the original Hatch shore parcel runs. With the exception of a short stretch of the right of way that crosses an intervening neighboring property, the right of way at issue runs entirely across Francis property, terminating along the common boundary between the land Alice P. Francis acquired from Sophie Lytle Hatch and the land owned by the estate of Roscoe Hatch, Jr. Defendants Sidney R. Francis, Jr. and Emilie Francis Cushman inherited the property of Alice P. Francis in 1988.

That same year Roscoe Hatch, Jr. died. M. Philip Amodeo, the plaintiff here, is the personal representative of Hatch's estate. In 1990 Amodeo filed on behalf of the Hatch estate a complaint seeking a declaratory judgment as to the existence and scope of an implied easement across the Francis property from the public road to the Hatch estate's property on the shore. Following a non-jury trial, the court entered a judgment in favor of the Francis heirs, declaring that no easement existed across the Francis land to provide access from the public road to the Hatch estate's parcel. This appeal followed.

■ Where there is no express grant, covenant, or statute creating an easement, no easement created by prescriptive use, and no easement by estoppel, any easement that exists must have been created by implication. *See Frederick v. Consolidated Waste Servs., Inc.*, 573 A.2d 387, 389 (Me.1990); *see also Jost v. Resta*, 536 A.2d 1113, 1114 (Me.1988). There is no evidence in this case of any granted or statutory easement benefitting the Hatch estate's lot, no evidence of a period of prescriptive use, and no evidence of any representation upon which an easement by estoppel might be based. Therefore any easement allowing access to the Hatch parcel across the Francis land can have been created only by implication. This Court has recognized several distinct doctrines by which an implied easement may be created. *See* Hermansen & Richards, *Maine Roads and Easements*, 48 Me.L.Rev. 197, 225–40 (1996). Amodeo on behalf of the Hatch estate argues that two of these doctrines, quasi-easement and easement by necessity, apply to create an easement burdening the Francis property for the benefit of the Hatch lot.

## I

■ An implied easement is created by quasi-easement when

a common grantor severs real estate, conveying part of it and retaining the balance (or conveying it to a third person), and the circumstances at the time of the conveyance denote the grantor's intent to subject the retained land (the servient estate) to an easement benefitting the conveyed land (the dominant estate). In order for such an implied easement to be recognized *(1) the "property when in single ownership [must have been] openly used in a manner constituting a 'quasi-easement,'"* (defined *... as existing conditions on the retained land that are apparent and observable and the retention of which would clearly benefit the land conveyed;* (2) the common grantor, who severed unity of title, must have "manifested an intent that the quasi-easement should continue as a true easement," to burden the retained land and to benefit the conveyed land; and (3) the owners of the conveyed land must have continued to use what had been a quasi-easement as a true easement.

*Frederick v. Consolidated Water Servs., Inc.,* 573 A.2d at 389–90 (citations omitted) (emphasis added).

 The trial court appears to have melded its analyses of the doctrines of quasi-easement and easement by necessity. The court without express reference to quasi-easement points out correctly, however, that no evidence establishes any use of the Francis property "that would clearly benefit" the Hatch estate's shore parcel at the time of the original severance. Specifically, no evidence was presented to establish the existence of an "apparent and observable" roadway on the land that would constitute a quasi-easement when Sylvia Stockbridge severed the Briggs parcel, now the Hatch estate's parcel, from her retained property. Because the record reveals no evidence of the existence on the land of such a condition at the time Sylvia Stockbridge severed the parcel from her property, no implied easement benefiting the Hatch estate's property can be determined to have been created by the doctrine of quasi-easement.

*II*

 An easement by necessity is created when

a grantor conveys a lot of land from a larger parcel, and that conveyed lot is "landlocked" by the grantor's surrounding land and cannot be accessed from a road or highway. Because of the strict necessity of having access to the landlocked parcel, an easement over the grantor's remaining land benefitting the landlocked lot is implied as a matter of law irrespective of the true intent of the common grantor.

*Frederick v. Consolidated Waste Servs., Inc.,* 573 A.2d at 389. The creation of an easement by necessity does not depend on any preexisting use of the land or on the intent of the grantor at the time of the conveyance. *Bowers v. Andrews,* 557 A.2d 606, 609 (Me. 1989). The creation of an easement by necessity depends, rather, on only three ele-

ments: (1) the conveyance of a lot out of a larger, divided parcel; (2) a lack "for all practical purposes" of access to the conveyed lot; and (3) the availability of relief in the form of an easement across the retained land of the conveyor.[1] *See Morrell v. Rice,* 622 A.2d 1156, 1158–60 (Me.1993).

The parties here do not dispute that the Hatch lot was conveyed from a larger parcel owned at the time by Sylvia Stockbridge and now owned in large part by the Francis heirs. Neither do the parties dispute that their parcels are so situated that access may be provided to the estate parcel in the form of an easement crossing the Francis land. The single issue here with respect to the creation of an easement by necessity is whether access to the Hatch estate parcel, for all practical purposes, is lacking, rendering the parcel "landlocked."

Whether a property is landlocked is a question of fact. *See Morrell v. Rice,* 622 A.2d at 1159. On the basis of the evidence presented here, the trial court found that "[t]here was no evidence presented as to the nature of the shore which would allow this Court to conclude that ingress and egress by water was not access in fact." We will not set aside the court's finding of fact unless it is "clearly erroneous." M.R.Civ.P. 52(a). A finding is clearly erroneous only when "(1) there is no competent evidence in the record to support it, or (2) it is based upon a clear misapprehension by the trial court of the meaning of the evidence, or (3) the force and effect of the evidence, taken as a total entity, rationally persuades to a certainty that the finding is so against the great preponderance of the believable evidence that it does not represent the truth and right of the case." *Pongonis v. Pongonis,* 606 A.2d 1055, 1057–58 (Me.1992).

 A surveyor's map entered in evidence establishes the estate's property as lying not within a cove or harbor but fronting on the open Atlantic. The estate offered undisput-

---

1. A special case of an easement by necessity may occur in circumstances involving the simultaneous conveyance of lots by a common grantor when one of the conveyed lots is inaccessible. See *Morrell v. Rice,* 622 A.2d 1156, 1158 (Me.

ed testimony[2] that the coastline of the estate parcel comprises a rather steep bank above a ledge and cobblestone beach. Undisputed testimony also establishes that no docks, wharves, or moorings exist on the parcel or on any adjacent property on that shore. No testimony was offered, however, and no evidence on the record establishes that a dock or wharf could not be built at reasonable expense to provide continuing and readily available access from the water. Given the lack of evidence that access to the Hatch estate parcel from the sea is for all practical purposes unavailable, we cannot say that the trial court clearly erred in finding the parcel not landlocked.

It is a venerable rule that no easement by necessity may be determined to exist benefiting a water-bounded and otherwise landlocked property absent evidence that access via the boundary water is unavailable. In *Hildreth v. Googins*, 91 Me. 227, 228, 39 A. 550, 551 (1898), we affirmed the denial of an easement by necessity for shore property at Old Orchard Beach on the ground, *inter alia*, that no evidence was presented that access by water was unavailable to the landowner. In *Kingsley v. Gouldsborough Land Improvement Co.*, 86 Me. 279, 281–82, 29 A. 1074, 1075 (1894), we affirmed the denial of an easement by necessity for a shorefront parcel on which wharves existed from which the owners ran a steamboat to Bar Harbor and Winter Harbor. Our decisions in *Hildreth* and *Kingsley* foreclose the possibility of an easement by necessity benefiting an otherwise landlocked property when the party claiming such an easement fails to establish the unavailability of access via bounding water.

We emphasize that it is not the mere physical proximity of water that defeats the claim here that the Hatch estate parcel is landlocked but rather the lack of evidence that access to the parcel via the water is unavailable for all practical purposes. We have held that when evidence *does* establish that access to an otherwise landlocked property via a bounding waterway is unavailable for all

practical purposes, that property is landlocked. *Morrell v. Rice*, 622 A.2d at 1159 (affirming judgment of easement by necessity where otherwise landlocked parcel with access by water at high tide lacked access for all practical purposes because at low tide access to the sea was across a tidal flat extending 1000 yards and dredging to enable boat access at all times, even if permitted, would have cost an estimated $300,000). In the case at hand no evidence was presented to establish that the conditions of the shore and bounding sea are such that for all practical purposes no access is available to the Hatch property from the water.

Because we affirm, on the basis of a failure of the plaintiff to meet his burden of proof, the judgment that no easement exists across the Francis property to provide the Hatch estate's shore parcel access to the town road, we need not reach the issue of the scope of such an easement.

The entry is:

Judgment affirmed.

All concurring.

---

1993) (citing *Bowers v. Andrews*, 557 at 609). Simultaneous conveyance is not at issue here.

**2.** The Francis heirs offered no evidence at all but rested at the close of the plaintiff estate's evidence.