2006 ME 121

**Robert WELCH et al.**

**v.**

**STATE of Maine et al.**

Supreme Judicial Court of Maine.

Argued: Sept. 19, 2006.
Decided: Oct. 26, 2006.

---

Andrew W. Sparks, Robert C. Santomenna (orally), Drummond & Drummond, L.L.P., Portland, for plaintiffs.

G. Steven Rowe, Atty. Gen., Lucinda E. White, Asst. Atty. Gen. (orally), Augusta, for defendants.

Panel: SAUFLEY, C.J., and CLIFFORD, DANA, ALEXANDER, CALKINS, LEVY, and SILVER, JJ.

ALEXANDER, J.

[¶ 1] Robert Welch, Janet Welch, and Sarah Montgomery (collectively the "Welches") appeal from a summary judgment entered in the Superior Court (Cumberland County, *Warren, J.*), arguing that the court erred in finding that they were not entitled to an easement by necessity through State-owned land surrounding their property. We affirm the judgment.

## I. CASE HISTORY

[¶ 2] Most of the facts in this case are undisputed. Where factual disputes do exist, we view the facts in the light most favorable to the Welches. *See River Dale Ass'n v. Bloss*, 2006 ME 86, ¶ 5, 901 A.2d 809, 811. The Welches own property in the Town of Rangeley, on the south shore of Rangeley Lake. Except for its frontage on the lake, the Welch property is sur-

rounded by Rangeley Lake State Park. The Welch property has no road access, and no deeded right of way across Rangeley Lake State Park.

[¶ 3] The Welch property and the park were once part of larger landholdings in Rangeley and Rangeley Plantation owned by Abner Toothaker, Ebeneezer Coe, and David Pingree. In 1892, deeds were conveyed dividing the property. The heirs of Toothaker became owners of the entire interest in the land in Rangeley. The Coe and Pingree Trustees became owners of the entire interest in the land in Rangeley Plantation. The division left the Toothaker land, including what was to become the Welch property, without road access. The Toothaker land was a peninsula that could only be accessed via Rangeley Lake or by crossing the Coe and Pingree land.

[¶ 4] In 1893, most of the Toothaker property was conveyed to the Tumford Falls Paper Company. A thirty-rod strip, which included what is now the Welch property, was excluded from the conveyance.

[¶ 5] There is a dispute as to whether there was road access to the peninsula when the paper company obtained the land. Accepting the Welches' version of the facts, there were two roads shown on a map of Franklin County in Colby, Atlas of the State of Maine (3rd ed. 1887), and on an 1895 map of Franklin County. These roads provided access to the lands along the south shore of Rangeley Lake in Rangeley and Rangeley Plantation at the eastern end of the thirty-rod strip. However, the roads indicated on the maps do not intersect the parcel of land now owned by the Welches, which is at the western end of the thirty-rod strip.

[¶ 6] Also in 1893, the thirty-rod strip was conveyed to F.S. Dickson. What became the Welch property was conveyed in 1902 to F.S. Dickson II and Elizabeth Dickson. The balance was acquired by the State of Maine and incorporated into the State Park. Eventually the Dickson property was conveyed to a Martha Wilson Bekeny, and then to the Welches.

[¶ 7] Though the Welch property lacks road access, the parcel is accessible by water from various points on Rangeley Lake, including public boat launches at Rangeley, at Oquossoc, and in the State Park itself. The Welches also have an interest in a private boat landing that is less than a mile from the parcel. During the winter months, the parcel can be accessed by snowmobile, cross-country skis, or snowshoes. The record indicates that thousands of snowmobiles cross Rangeley Lake each season. All three of the Welch plaintiffs have accessed the parcel by water. In addition, Robert and Jane Welch have an ownership interest in Narramatic Island, located in Rangeley Lake, about one-half mile northwest of the property at issue in this case. They have used their snowmobile to access the island during the winter months.

[¶ 8] The Welches offered evidence that travel on Rangeley Lake by boat can, at times, be hazardous due to wind. They also offered evidence that during the freeze in the fall and the thaw in the spring, the lake is not passable by water or over the ice for as few as two or as many as eight weeks. During some winter months, passage over the ice is unsafe due to pressure ridges and snow drifts.

[¶ 9] In 2002, the Welches filed suit against the State and the Mead Oxford Corporation, claiming an easement by necessity and a quasi-easement. The suit against the Mead Oxford Corporation, now owned by Bayroot, LLC, was dismissed, and Bayroot, LLC has agreed to allow an easement through its property should the Welches prevail in this case. The State filed a motion for summary judgment based on sovereign immunity, which the

**1210**

court granted. We vacated that decision and remanded. *Welch v. State,* 2004 ME 84, 853 A.2d 214.

[¶ 10] Following the remand, the Welches and the State filed cross-motions for summary judgment. The court granted the State's motion for summary judgment, and denied the Welches' motion for summary judgment, finding that there was no evidence of continued use for the quasi-easement count, and that Rangeley Lake provided reasonable access, based on the circumstances existing at the time of severance, for the easement by necessity count. The Welches appeal only the judgment on the easement by necessity count.

## II. LEGAL ANALYSIS

[¶ 11] We review the grant of a motion for summary judgment de novo, "viewing the evidence in the light most favorable to the nonmoving party, to decide whether the parties' statements of material fact and referenced record evidence reveal a genuine issue of material fact." *River Dale Ass'n,* 2006 ME 86, ¶ 5, 901 A.2d at 811 (quoting *Rice v. City of Biddeford,* 2004 ME 128, ¶ 9, 861 A.2d 668, 670). "A material fact is one having the potential to affect the outcome of the suit." *Burdzel v. Sobus,* 2000 ME 84, ¶ 6, 750 A.2d 573, 575. "A genuine issue exists when sufficient evidence supports a factual contest to require a factfinder to choose between competing versions of the truth at trial." *Id.*

[¶ 12] An easement by necessity can be created when a lot that is conveyed from a larger parcel of land is "landlocked," and cannot be accessed by road. *Murch v. Nash,* 2004 ME 139, ¶ 18, 861 A.2d 645, 651 (citing *Frederick v. Consol. Waste Servs., Inc.,* 573 A.2d 387, 389 (Me. 1990)). "Whether a property is landlocked is a question of fact." *Amodeo v. Francis,* 681 A.2d 462, 465 (Me.1996) (citing *Morrell v. Rice,* 622 A.2d 1156, 1159 (Me.1993)).

The creation of an easement by necessity depends on three elements: (1) the conveyance of a lot out of a larger parcel; (2) a lack "for all practical purposes" of access to the conveyed lot; and (3) the availability of relief in the form of an easement across the retained land of the conveyor or the conveyor's successor in title. *Murch,* 2004 ME 139, ¶ 18, 861 A.2d at 651 (quoting *Amodeo,* 681 A.2d at 465).

[¶ 13] Land abutting navigable water is generally not entitled to an easement by necessity over neighboring land because it is not considered to be landlocked. *Murch,* 2004 ME 139, ¶ 20, 861 A.2d at 652. This is true despite the fact that water access to the parcel is inconvenient. *Id.* "[N]o easement by necessity may be determined to exist benefiting a water-bounded and otherwise landlocked property absent evidence that access via the boundary water is unavailable." *Amodeo,* 681 A.2d at 466.

[¶ 14] The Superior Court concluded that the Welches offered sufficient undisputed evidence for summary judgment purposes to satisfy the first and third elements of an easement by necessity: the conveyance of a lot out of a larger property and the availability of relief in the form of an easement across the neighboring land. The issue for us is whether or not the Welches have generated a genuine issue of material fact regarding a lack "for all practical purposes" of access to the Welch property.

[¶ 15] "Whether an implied easement [by necessity] exists is determined by examining the circumstances existing at the time the landlocked parcel is severed from the parcel with access." *Morrell,* 622 A.2d at 1160.

[¶ 16] The Superior Court accepted as true the Welches' evidence of the existence of the roads providing access to the eastern end of the thirty-rod strip as shown on the map in Colby's ATLAS OF MAINE and the

1895 map of Franklin County. The Welches' parcel was severed from that strip in 1902. The court therefore looked to the circumstances existing in 1902 to determine whether an easement by necessity should be found. On appeal, the Welches argue that the time of severance was 1892, when the initial parcel was severed and the peninsula was deprived of road access.

[¶ 17] For all practical purposes, the prevailing conditions in 1892 and 1902 were virtually the same. It is undisputed that in the late nineteenth century, travel to the shores of Rangeley Lake was generally by small boats or by steamboat. In the winter, visitors traveled over the ice by foot or by horse and sled.

[¶ 18] The Welches contend that the historic modes of travel prevailing at the time of severance do not define the limits of reasonable access for all time. They argue that if this were true, similar properties would be forever restricted to their historical uses, such as logging and seasonal recreation. They urge us to find an easement by necessity for all reasonable and lawful purposes for which their property could be used today.

■ [¶ 19] The Welches also assert that the undisputed facts in this case regarding various hazardous conditions that affect their ability to access the parcel by boat or on ice, demonstrate that they currently lack access to their parcel for all practical purposes. The Welches, however-er, misconstrue the second element that is required to find an easement by necessity. They are not entitled to an easement for all conceivable "practical purposes" that their land may be used for. Rather, they are entitled to an easement by necessity only if, "for all practical purposes," there is a lack of access. As the Welches' property is accessible by navigable water, and by ice in the winter, they have not established, as a matter of law, the second element required to find an easement by necessity.

[¶ 20] This conclusion is consistent with our decision in *Amodeo*. There we affirmed the trial court's finding that an otherwise landlocked parcel, which abutted the ocean with "a rather steep bank above a ledge," did not lack access for all practical purposes, despite the fact that no docks, wharves, or moorings existed at the time. 681 A.2d at 466. In *Murch*, we held that a parcel of waterfront property on Great Cranberry Island that could be accessed by skiff twenty hours per day and by powerboat fourteen to sixteen hours per day, and had access to utilities via underwater cable, had reasonable access for all practical purposes. 2004 ME 139, ¶ 21, 861 A.2d at 652. The availability of water access addressed in these opinions *does not differ significantly from the current case.* Because the Welch parcel is not, for all practical purposes, deprived of access, we affirm the Superior Court's determination that they are not entitled to an easement by necessity.[1]

---

1. The Welches also argue that pursuant to our holding in *Morrell,* we should expand the "scope" of their easement to include road access. In *Morrell,* we held that the Morrells' easement over neighboring land included the installation of utilities, and was not limited to serving only a single-family home. 622 A.2d at 1160–61. This was because we decided that the scope of an easement is not "determined solely in reference to the time of its creation." *Id.* at 1160. However, this case differs from *Morrell* because there, we first affirmed the trial court's finding of an ease-ment by necessity because the Morrell parcel lacked, for all practical purposes, any access by water. *Id.* at 1159. In the present case, because the Welch parcel is not deprived of access by water, no easement by necessity exists over the State land in the first place. The undisputed facts show that the same modes of access available to the Welch property at the time of severance—by boat or over the ice—exist today. We cannot expand the scope of an easement without first finding that an easement by necessity exists.

[¶ 21] The Welches also urge us to reexamine our rule set forth in case law, *see e.g., Murch,* 2004 ME 139, ¶ 20, 861 A.2d at 652, that land accessible by navigable water is not entitled to an easement by necessity. The Welches cite to case law in several other states that has implied an easement by necessity over land, even when the property in question had access by water, via ocean or lake. Such a change in the law would have wide ranging and unpredictable impacts upon property rights along thousands of miles of shorelines abutting ponds, lakes, rivers, and the Atlantic Ocean. We decline to alter the current law on the facts of this case.

The entry is:

Judgment affirmed.