2008 ME 92

**NORTHLAND REALTY, LLC**

v.

**Bernard CRAWFORD et al.**

Supreme Judicial Court of Maine.

Submitted on Briefs: April 30, 2008.

Decided: June 3, 2008.

William S. Kany, Esq., Michael I. Montembeau, Esq., Smith Elliott Smith & Garmey, P.A., Saco, ME, for Northland Realty, LLC.

Edward S. MacColl, Esq., Thompson, Bull, Furey, Bass & MacColl, LLC, P.A., Portland, ME, for Bernard and Beverly Crawford.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, LEVY, SILVER, and MEAD, JJ.

ALEXANDER, J.

[¶ 1] Northland Realty, LLC appeals from a judgment of the Superior Court (Cumberland County, *Warren*, J.)granting partial summary judgment in favor of Bernard and Beverly Crawford on Northland's claim for an easement by necessity and, after a nonjury trial, finding that the Crawfords acquired title to a portion of Northland's property by adverse possession. Northland argues that the court erred in (1) entering summary judgment against Northland on its easement by necessity claim, and (2) finding that the Crawfords' possession of Northland's property was "hostile" and under a "claim of right." [1] We affirm the judgment.

---

1. Northland also argues the court erred in accepting the Crawfords' proposed description of the boundary for the adversely possessed land. The Superior Court gave Northland an opportunity to comment on the proposed boundary description before it entered final judgment but Northland did not do so. Northland, therefore, failed to preserve that issue and we decline to address it on appeal. *See Foster v. Oral Surgery Assocs., P.A.*, 2008 ME 21, ¶ 22, 940 A.2d 1102, 1107.

## I. CASE HISTORY

[¶ 2]  This appeal involves two parcels of land in Falmouth: the "Front Parcel," owned by the Crawfords, and the "Back Parcel,"[2] owned by Northland. In 1936, the Front and Back Parcels were conveyed, as a single lot, to Grace Babb. Babb severed the lot in 1961 when she conveyed the Front Parcel to Roscoe and Beryl Goodwin by warranty deed, and retained the Back Parcel. The 1961 deed contained a covenant that the Front Parcel was "free of all encumbrances."

[¶ 3]  The Front Parcel borders Blackstrap Road. The Back Parcel has never had frontage on any existing street. At the time of the 1961 conveyance, and ever since, no traveled way across the Front Parcel has ever existed that connected the Back Parcel to a public road. The 1961 conveyance, therefore, left the Back Parcel landlocked.

[¶ 4]  In 1965, the Goodwins conveyed the Front Parcel to another owner, who conveyed it to the Crawfords in 1971. All of the deeds in the Crawfords' chain of title contain a covenant that the land was "free of all encumbrances." None contained or referenced an easement allowing an owner of the Back Parcel to cross the Front Parcel to access a public way.

[¶ 5]  Northland eventually obtained title to the Back Parcel and, in May of 2006, filed a multi-count complaint against the Crawfords, which included counts for an implied "easement by necessity" and an "easement by implication" over the Front Parcel. The Crawfords counterclaimed asserting that they acquired title to the Back Parcel by adverse possession. They also filed a motion to dismiss and a motion for summary judgment, asserting that no easement across the Front Parcel existed.

[¶ 6]  In October 2007, the court granted the Crawfords' motion for summary judgment on the issues of implied easements, concluding that no implied easement by necessity and no implied easement by prior quasi-easement arose when Babb severed her property in 1961.[3] The court denied the Crawfords' motion for summary judgment on the issue of adverse possession, and the case proceeded to trial.

[¶ 7]  At the bench trial, Mrs. Crawford testified to the following: She and Mr. Crawford purchased their house on the Front Parcel in 1971 and, soon after, created a clearing in the Back Parcel by cutting poplar trees and clearing brush and saplings. They mowed a lawn on the Back Parcel every year since 1971 and maintained gardens there most years since 1972. They never obtained permission to garden there. Only the Crawfords, their three sons, relatives, and guests used the lawn. Mrs. Crawford has been running a day-care at their home since 1979 or 1980 and the day-care children regularly use the whole backyard. Mrs. Crawford always considered the Back Parcel part of her backyard.

[¶ 8]  Mr. Crawford testified that he did not know of anyone who thinks of the Back Parcel as something other than the Crawfords' backyard.

[¶ 9]  He admitted that some time before 2000, he sought a right of first refusal to purchase Babb's interest in the Back Parcel if she ever decided to sell it and

---

2.  Throughout the history of this case, the parties have given the Back Parcel a variety of names, including the "Back Lot," the "Back Land," and the "Northland Property."

3.  Although the Superior Court and the parties used the general term "easement by implication," the context in which they did so suggests that they were referring to the specific type of implied easement termed "implied easement by prior quasi-easement."

that, when he made that offer, Babb owned his backyard.

[¶ 10] The court found the Crawfords met their burden of proving the elements of adverse possession as to the cleared portion of the Back Parcel. Northland then filed this appeal.

## II. LEGAL ANALYSIS

### A. Easement by Necessity

[¶ 11] Northland argues the court erred in concluding that Maine law does not recognize an easement by necessity in cases in which the grantor retains the landlocked land. Whether the doctrine of easement by necessity applies in cases in which the grantor retains the landlocked land is a question of law and, therefore, subject to de novo review. *See Town of Frye Island v. State*, 2008 ME 27, ¶ 10, 940 A.2d 1065, 1068.

[¶ 12] We have recognized two types of implied easements: implied easements by necessity and implied easements created by, or arising from, a prior quasi-easement.[4] *Amodeo v. Francis*, 681 A.2d 462, 464–65 (Me.1996); *Bowers v. Andrews*, 557 A.2d 606, 609 (Me.1989). An easement by necessity is created when:

> a grantor conveys a lot of land from a larger parcel, and that *conveyed* lot is "landlocked" by the grantor's surrounding land and cannot be accessed from a

road or highway. Because of the strict necessity of having access to the land-locked parcel, an easement over the *grantor's remaining land* benefitting the landlocked lot is implied as a matter of law irrespective of the true intent of the common grantor.

*Amodeo*, 681 A.2d at 465 (emphasis added). *See also Frederick v. Consol. Waste Servs., Inc.*, 573 A.2d 387, 389 (Me.1990). Since *Amodeo*, we have consistently stated that the creation of an easement by necessity depends on three elements: "(1) the conveyance of a lot out of a larger parcel; (2) a lack 'for all practical purposes' of access to the *conveyed lot;* and (3) the availability of relief in the form of an easement across the *retained land* of the conveyor or the conveyor's successor in title."[5] *Welch v. State*, 2006 ME 121, ¶ 12, 908 A.2d 1207, 1210 (citing *Murch v. Nash*, 2004 ME 139, ¶ 18, 861 A.2d 645, 651) (emphasis added). "The creation of an easement by necessity does not depend on any preexisting use of the land or on the intent of the grantor at the time of the conveyance." *Amodeo*, 681 A.2d at 465. We recognize easements by necessity in light of the public policy that land should not be rendered unfit for use. *See Morrell v. Rice*, 622 A.2d 1156, 1159 (Me.1993).

[¶ 13] In contrast, the creation of an implied easement by a prior quasi-easement depends on both a preexisting

---

**4.** We have not always been consistent in how we refer to the two types of implied easements. *See, e.g., Frederick v. Consol. Waste Servs., Inc.*, 573 A.2d 387, 389–90 (Me.1990) (referring to implied easement by necessity as an "easement created by strict necessity" and using the general term "implied easement" when describing the "second type of implied easement"); *LeMay v. Anderson*, 397 A.2d 984, 988 n. 3 (Me.1979) (referring to an implied easement by necessity as "a way of necessity"). In some cases, it is not clear whether we are discussing implied easements in general or one type of easement in particu-

lar. *See, e.g., Robinson v. Me. Cent. R.R. Co.*, 623 A.2d 626, 627–28 (Me.1993) (using the term "implied easement" throughout the opinion when the analysis suggests we are discussing, in particular, implied easements by prior quasi-easement).

**5.** In *Amodeo v. Francis*, we added, "[a] special case of an easement by necessity may occur in circumstances involving the simultaneous conveyance of lots by a common grantor when one of the conveyed lots is inaccessible." 681 A.2d 462, 465 n. 1 (Me.1996).

use of the land and the intent of the grantor at the time of conveyance. *See Frederick*, 573 A.2d at 389. An implied easement by a prior quasi-easement arises when:

> (1) the property when in single ownership [was] openly used in a manner constituting a "quasi-easement," as existing conditions on the retained land that are apparent and observable and the retention of which would clearly benefit the land conveyed; (2) the common grantor, who severed unity of title, . . . manifested an intent that the quasi-easement should continue as a true easement, to burden the retained land and to benefit the conveyed land; and (3) the owners of the conveyed land . . . continued to use what had been a quasi-easement as a true easement.

*Robinson v. Me. Cent. R.R. Co.*, 623 A.2d 626, 627 (Me.1993) (citing *Frederick*, 573 A.2d at 389–90) (quotation marks and citations omitted).

[¶ 14]  Only in cases involving implied easements arising from prior quasi-easements have we held that a grantor can impliedly reserve an easement that benefits the land retained and burdens the land conveyed. *See, e.g., Robinson*, 623 A.2d at 627.[6] In determining whether the grantor impliedly reserved an easement over the conveyed land in such cases, we apply the traditional rule of construction that "ambiguities with respect to whether an easement was impliedly reserved be resolved in favor of the grantee." *LeMay v. Anderson*, 397 A.2d 984, 987 (Me.1979).

[¶ 15]  Here, Babb conveyed the Front Parcel out of the larger lot. Although that conveyance left the Back Parcel landlocked, the Front Parcel was and has always been accessible. In such a case, we decline to imply that an easement by necessity arose, against the interests of the grantee, based solely on the fact that the grantor created and retained a landlocked parcel. There is no evidence here of the grantor's intent to retain a quasi-easement as a true easement. To the contrary, the conveyance expressly covenanted that the Front Parcel was "free of all encumbrances." Therefore, the court properly concluded that no easement by necessity was created when Babb severed her land in 1961. *See Welch*, 2006 ME 121, ¶ 12, 908 A.2d at 1210.

## B.  Adverse Possession

[¶ 16]  Northland argues that the court erred in finding that the Crawfords possessed part of its land under a "claim of right" because Mr. Crawford asked Babb for a right of first refusal and testified Babb "owned my back yard."[7] Northland argues this evidence demonstrates that the Crawfords' possession was "in recognition of or subordination to" Babb's status as the record title owner.

[¶ 17]  "Adverse possession presents a mixed question of law and fact." *Dombkowski v. Ferland*, 2006 ME 24, ¶ 28, 893 A.2d 599, 606 (quotation marks omitted). "[W]hether the necessary facts exist is for the trier of fact, but whether those

---

**6.**  Although we used the general term "easement by implication" throughout our opinion, we upheld the easement for satisfying the elements of quasi-easement. *Robinson*, 623 A.2d at 627–28 (citing to *Frederick*, 573 A.2d at 389–90 for the elements of the "second type of implied easement").

**7.**  Northland also argued that the Crawfords' possession was not under a "claim of right"

because Mr. Crawford sought and obtained a release deed from Babb in 2007. However, the court never admitted that release deed as evidence and could have reasonably concluded that the 2007 transaction was an effort to clarify issues during litigation, without affecting the factual context supporting the adverse possession claim.

facts constitute adverse possession is an issue of law for the court to decide." *Id.* "We will uphold the court's determination of the facts underlying an adverse possession claim if the findings are supported by credible evidence in the record." *Id.* A party claiming title by adverse possession has the burden of proving, by a preponderance of the evidence, that the possession and use of the property was "(1) actual; (2) open; (3) visible; (4) notorious; (5) hostile; (6) under a claim of right; (7) continuous; (8) exclusive; and (9) of a duration exceeding the twenty-year limitations period." *Wood v. Bell,* 2006 ME 98, ¶ 12, 902 A.2d 843, 848 (quotation marks omitted).

### 1. Hostile Possession

[¶ 18] Hostile possession "means that the possessor does not have the true owner's permission to be on the land." *Id.* ¶ 13, 902 A.2d at 849. "Permission negates hostility." *Id.* Here, there was no evidence that Babb ever gave the Crawfords express or implied permission to possess part of the Back Parcel. Although Babb took no action to prevent the Crawfords from using the Back Parcel after Mr. Crawford sought a right of first refusal, there was no evidence that Babb was aware of the Crawfords' possession. Therefore, the finding of hostile possession is supported by the evidence.

### 2. Claim of Right

[¶ 19] Possessing land under a claim of right means the claimant is in possession as owner, with intent to claim the land as one's own, and not in recognition of or subordination to the record title holder. *Id.* An individual possesses land under a "claim of right," even though the individual acknowledges that he or she does not have record title, as long as the possession is with the intent to claim the land as one's own. *See id.* ¶ 17, 902 A.2d at 850. The intention of an adverse possessor is a matter of fact to be determined by the fact-finder. *See id.* (citing *Eaton v. Jacobs,* 52 Me. 445, 453 (1864)).

[¶ 20] Here, the Crawfords cleared the Back Parcel soon after purchasing their home; they mowed, gardened, and sledded in the cleared portion; and Mrs. Crawford's day-care used the Back Parcel regularly. Mrs. Crawford testified that she believed they owned the entire Back Parcel and Mr. Crawford testified that he did not know of anyone who did not think of it as their backyard. The fact that Mr. Crawford knew that Babb held record title and, at one point, asked Babb for a right of first refusal, does not compel a finding that the Crawfords believed their possession was subordinate to Babb's. *See Wood,* 2006 ME 98, ¶¶ 5, 17, 902 A.2d at 847, 850. Therefore, the court's finding that the Crawfords possessed the cleared portion under a "claim of right" was supported by credible evidence.

The entry is:

Judgment affirmed.