2009 ME 43

**Frank CONNOLLY et al.**

v.

**MAINE CENTRAL RAILROAD CO.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Jan. 22, 2009.
Decided: April 30, 2009.

Glen L. Porter, Esq., Ryan P. Dumais, Esq., Eaton Peabody, Bangor, for Maine Central Railroad Company.

William N. Palmer, Esq., Gray & Palmer, Bangor, for Frank Connolly and Kathryn McCatherin.

Panel: CLIFFORD, ALEXANDER, LEVY, SILVER, MEAD, and GORMAN, JJ.

CLIFFORD, J.

[¶ 1] Maine Central Railroad Co. appeals from a summary judgment in favor of Frank Connolly and Kathryn McCatherin entered in the Superior Court (Penobscot County, *Murphy, J.*) declaring that Connolly and McCatherin possess an easement over Maine Central property. Because we agree with Maine Central that, based on the record before it, the court erred in entering the summary judgment in favor of Connolly and McCatherin on their claim for an implied quasi-easement, we vacate the judgment and remand for a trial.

## I. BACKGROUND

[¶ 2] Viewed in the light most favorable to Maine Central, as the nonprevailing party, the summary judgment record establishes the following facts. *See Dyer v. Dep't of Transp.*, 2008 ME 106, ¶ 14, 951 A.2d 821, 825. By an 1850 deed, Sylvester Hewes conveyed a strip of land in Hermon to the Penobscot and Kennebec Railroad Company, the predecessor of Maine Central, on which a railroad track was later constructed. The strip of land, which is the subject of the current action, was six rods wide and forty-eight rods long. Although the conveyance resulted in the complete bisection of Sylvester Hewes's property, the deed did not contain any language reserving to Hewes any rights to cross the railroad track.

[¶ 3] Subsequent owners of Sylvester Hewes's property, the Pendleton family, regularly crossed Maine Central's railroad track to access the southerly portion of the property in order to harvest hay, farm, swim, ice skate, pick blueberries, and access a boat on adjoining Hermon Pond. In the fifty-seven years that the Pendletons regularly crossed Maine Central's track, Maine Central never denied them access and never indicated to the Pendletons in any way that their ability to cross the track was subject to Maine Central's consent.

[¶ 4] Connolly and McCatherin obtained the former Sylvester Hewes and Pendleton property from Carol J. Tozier

by deed dated March 16, 1998. Since then, Connolly and McCatherin have also crossed Maine Central's track to access the southern portion of their property, and, in addition, have made improvements to Maine Central's strip of property.

[¶ 5] On February 7, 2007, Connolly and McCatherin filed a complaint against Maine Central in the District Court (Bangor) seeking a declaratory judgment that they possess a "permanent free, open and unobstructed perpetual right-of-way" over Maine Central property. Maine Central removed the matter to the Superior Court. *See* M.R. Civ. P. 76C.

[¶ 6] Connolly and McCatherin moved for a summary judgment on the ground that, based on the undisputed facts, they are entitled to a declaration that their land is benefited by an easement over Maine Central's track allowing them to access the remainder of their property located south of the track. The court entered a summary judgment in favor of Connolly and McCatherin, concluding that the undisputed facts established that they indeed possessed an implied quasi-easement over Maine Central's property. Maine Central appealed from that decision.

## II. DISCUSSION

[¶ 7] In challenging the court's grant of a summary judgment in favor of Connolly and McCatherin, Maine Central contends that Connolly and McCatherin failed to establish, as a matter of law, each element of an implied quasi-easement. "Summary judgment is appropriate when

review of the parties' statements of material facts and the referenced record evidence indicates no genuine issue of material fact that is in dispute, and, accordingly, the moving party is entitled to judgment as a matter of law." *Dyer*, 2008 ME 106, ¶ 14, 951 A.2d at 825.

[¶ 8] A quasi-easement is created "when a common grantor severs real estate, conveying part of it and retaining the balance . . ., and the circumstances at the time of the conveyance denote the grantor's intent to subject the [conveyed] land (the servient estate) to an easement benefiting the [retained] land (the dominant estate)."[1] *Frederick v. Consol. Waste Servs., Inc.*, 573 A.2d 387, 389 (Me.1990). In order to establish the existence of an implied quasi-easement at the summary judgment stage, there must be no genuine issue of material fact with respect to the following elements:

(1) the property when in single ownership [was] openly used in a manner constituting a "quasi-easement," as existing conditions on the [conveyed] land that are apparent and observable and the retention of which would clearly benefit the land [retained]; (2) the common grantor, who severed unity of title, . . . manifested an intent that the quasi-easement should continue as a true easement, to burden the [conveyed] land and to benefit the [retained] land; and (3) the owners of the [retained] property . . . continued to use what had been a quasi-easement as a true easement.

---

1. The seminal case elucidating the test of an implied quasi-easement, *Frederick v. Consolidated Waste Services, Inc.*, 573 A.2d 387, 389 (Me.1990), involved the creation of an easement on retained land. Nevertheless, we noted in both *Robinson v. Maine Central Railroad Co.*, 623 A.2d 626, 627 (Me.1993), and *LeMay v. Anderson*, 397 A.2d 984, 987 (Me.1979), that an implied quasi-easement may also be

created on the conveyed land, depending on the circumstances of the individual case. Thus, the test of an implied easement can be applied to determine whether the retained land or the conveyed land is burdened by the alleged easement. In the present matter, the alleged easement is on the conveyed land to benefit the retained land.

*Northland Realty, LLC v. Crawford*, 2008 ME 92, ¶ 13, 953 A.2d 359, 364 (some alterations in original).

■ [¶ 9] It is primarily the second element—the intent of the grantor—that is at issue in this appeal. Specifically, the summary judgment record contains little in the way of undisputed facts regarding Sylvester Hewes's intent that his property would retain an easement over Maine Central's strip of property after the conveyance was complete. Although a fact-finder might be persuaded to infer from the circumstances of the conveyance such an intent on Hewes's part, that intent cannot be inferred as a matter of law on this summary judgment record.[2] On the state of the record, Sylvester Hewes's intent to retain an easement over the property conveyed to Maine Central is not conclusively established. There is a dispute of material fact as to at least one necessary element of proof for an implied quasi-easement, namely, the intent of Sylvester Hewes, and therefore summary judgment was improperly entered. Thus, this matter instead must be remanded for a trial in which the evidence presented may or may not support an inference of an intent on the part of Sylvester Hewes that the quasi-easement should continue as a true easement benefiting the property he retained in addition to the remaining elements of an implied quasi-easement. *See Northland Realty, LLC*, 2008 ME 92, ¶ 13, 953 A.2d at 364. Because at least one element of proof remains disputed, we need not consider the summary judgment facts as to the remaining elements.

The entry is:

Judgment vacated. Remanded to the Superior Court for further proceedings consistent with this opinion.

**2.** We decline Connolly and McCatherin's invitation to import the necessary facts from the decision in *Robinson*. In *Robinson*, William Hewes, the abutting neighbor of Sylvester Hewes, conveyed a strip of his property to Maine Central's predecessor, for construction of the same railroad track. 623 A.2d at 626. The conveyance bisected the property of William Hewes, but Hewes and his successors nevertheless continued to cross the track to obtain access to the southern portion of their property. *Id.* In *Robinson*, the deed from William Hewes contained no language reserving a right-of-way to William Hewes or his successors. *Id.* We affirmed the trial court's entry of a summary judgment in favor of the plaintiff, Robinson, the successor in title to William Hewes, in which the trial court determined, as a matter of law, that Robinson had an implied easement across Maine Central's track. *Id.* at 628.

The facts of *Robinson* are strikingly similar to those in the present matter, and both Connolly and McCatherin and the Superior Court relied on the *Robinson* decision. The Superior Court in this case stated: "Because the facts of *Robinson* are almost identical to the facts of this case and *Robinson* has not been overturned, the Court grants Plaintiff's motion [for a summary judgment]." Maine Central contends, however, that the court erred in relying to any degree on *Robinson* because the court in this case should have been confined to consider only the facts in the parties' statements of material facts, and because *Robinson* is distinguishable from this case.

We agree with Maine Central that the intent of Sylvester Hewes in this case cannot be inferred from the facts regarding Williams Hewes's intent in *Robinson*. Although factually similar, the summary judgment evidence presented in the two matters is not identical, particularly given that the summary judgment documents in *Robinson* contained more detailed facts supporting the necessary elements of an implied quasi-easement than those in the present matter.