STATE OF MAINE

YORK, ss.

SEAGULL CONDOMINIUM
ASSOCIATION,

Plaintiff

v.

FIRST COAST REALTY &
DEVELOPMENT, LLC,

Defendant

and

MBM INVESTMENT PARTNERS, et al.,

Parties-in-Interest

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. RE-09-93

GAB - YOR - 7/19/2011

ORDER

The court has before it Defendant First Coast Realty & Development, LLC's

("First Coast") motion for summary judgment on Counts I-III, V, and VII of Plaintiff

Seagull Condominium Association's ("SCA") second amended complaint, on portions

of Counts I-II of First Coast's counterclaim and in full on Counts III-IV of First Coast's

counterclaim.

## BACKGROUND

First Coast is a Maine limited liability company created in March 2008. M. Harry

Zea is currently First Coast's sole owner and member. Seagull Condominium is a

condominium complex located in Wells, Maine. Seagull Condominium was created by

the recording of the Seagull Condominium Declaration of Condominium (the

"Declaration") in the York County Registry of Deeds on August 19, 2003 by the original

Declarant of Seagull Condominium, Broderick Associates, Inc. Broderick Associates,

Inc. conveyed its interest in Seagull Condominium, including the declarant's rights and any interest in the real property to the Wells Group, LLC ("Wells Group") (Def.'s S.M.F. ¶ 6, *as qualified by* Pl.'s Opp. S.M.F. ¶ 6.) First Coast acquired Wells Group's property interests and Declarant rights in Seagull Condominium by virtue of a deed and an Assignment and Assumption of Special Declarant Rights.

Under the terms of the Declaration, First Coast has the right to add condominium units in phases. As of the original Declaration, eleven units were created and declared as part of the Seagull Condominium. The Declaration references a recorded plan, recorded as Condominium Plan 551, Sheet 2. Subsequent to the recording of the Declaration, there have been eleven amendments to the Declaration, all filed in the York County Registry of Deeds. (*See* Ex. H.) In the Declaration and in each amendment to the Declaration that declared and added units, there was a chart labeled Exhibit B to Declaration – Percentage Interest in Common Elements and Voting Rights." (Ex. D; Ex. H.) The Declaration describes the chart as "contain[ing] a list of all Units by their identifying Number and Percentage Interest" as well as describing "[t]he liability of each Unit for Common Expenses of the Condominium" and the SCA votes allocated to each Unit. (Ex. D. §§ 5.1-5.3.)

As SCA recorded amendments adding units to the condominium, SCA recorded new plans replacing the Phase I Plan along with the original Declaration on a number of occasions. The most recent plan recorded in connection with the Seagull Condominium was the Phase IV Plan, recorded on July 21, 2005, the same date as the Fifth Amendment to the Declaration, at Condominium File 551, Page 7. The Phase IV Plan depicts certain units in addition to those added on the Exhibit B as part of the Fifth Amendment. The Phase IV Plan depicts 67 units, which is more than the number of units declared or added pursuant to any Amendment to the Declaration. (Def.'s S.M.F. ¶ 42, *as qualified*

2

*by* Pl.'s Opp. S.M.F. ¶ 42.) At the same time and subsequent to the recording of the Phase IV Plan, the Fifth, Sixth, Ninth, Tenth, and Eleventh Amendments all explicitly state that they were adding units to the Seagull Condominium. (Def.'s S.M.F. ¶ 43, *as qualified by* Pl.'s Opp. S.M.F. ¶ 43.)

First Coast currently owns Unit 1, the Barn Unit, Units 60-61, and Units 64-66, which were part of the Phase IV Plan. Unit 60 shares a duplex with 59 and Unit 61 shares a duplex with 62.[1] First Coast leases Unit 64 to the public without paying dues to SCA. Units 65 and 66 are empty. First Coast does not share in the common expenses for Units 60-61 and 64-66 because it claims that the units were never declared and added to SCA.

Seagull Condominium filed a second amended complaint with causes of action against First Coast for: count I – declaratory judgment that Units 60, 61, and 64-66 were declared and added to the condominium by virtue of the recording of the Phase IV Plan and are subject to unpaid condominium fees; count II – declaratory judgment that the Declaration, Plats and Plans of SCA establish an easement to use the White House as an office; count III – foreclosure of the condominium lien for unpaid assessments in count I; count IV – foreclosure of a condominium lien against Two Lights; count V – breach of contract for unpaid assessments and rental fees on the purportedly declared units; count VI – unjust enrichment in connection with the unpaid assessments and rental fees; and count VII – breach of the condominium act, 22 M.R.S. § 1603-107 against First Coast.

---

[1] Wells Group conveyed Units 59 and 62 prior to the conveyance to First Coast. Wells Group paid dues on Units 60 and 61, despite First Coast's claim that those units have never been declared and added to SCA in an amendment to the Declaration. (Pl.'s S. Add'l M.F. ¶ 126, *as qualified by* Def.'s Rep. S.M.F. ¶ 126.)

3

First Coast filed a counterclaim against Seagull Condominium alleging: count I – declaratory judgment that Units 60-66 have never been declared; count II – declaratory judgment that the rental program cannot be enforced against Units 60-61 and 64-66; count III – declaratory judgment that SCA has no easement to the Barn Unit or White House; count IV – declaratory judgment that SCA is estopped from asserting that First Coast is liable for unpaid assessments due by virtue of SCA's failure to issue resale certificates on Units 60-61 and 64-66; count V – tortious interference; count VI – slander of title; and count VII – defamation. First Coast now brings the instant motion for summary judgment on counts I-III, V, and VII of Seagull Condominium's second amended complaint and on portions of counts I and II and all of counts III and IV of its counterclaim.

## DISCUSSION

### I. Standard of Review

Summary judgment should be granted if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. M.R. Civ. P. 56(c). In considering a motion for summary judgment, the court should consider the facts in the light most favorable to the non-moving party, and the court is required to consider only the portions of the record referred to and the material facts set forth in the parties' Rule 56(h) statements. *See e.g., Johnson v. McNeil*, 2002 ME 99, ¶ 8, 800 A.2d 702, 704. "The declaration of rights in the condominium development is a contract." *Farrington's Owners' Ass'n v. Conway Lake Resorts, Inc.*, 2005 ME 93, ¶ 10, 878 A.2d 504, 507 (citing *Alexander v. Fairway Villas, Inc.*, 1998 ME 226, ¶ 11, 719 A.2d 103, 106). "As a contract, the Declaration must be interpreted to effect the parties' intentions as reflected in the instrument, construed with regard for the subject matter, motive, and purpose of

4

the agreement, as well as the object to be accomplished." *Fairway Villas, Inc.*, 1998 ME 226, ¶ 11, 719 A.2d at 106.c

## II. Units 60-61 and 64-66

The first issue in this case is whether Units 60-61 and 64-66 were ever declared and added to SCA. If Units 60-61 and 64-66 were never properly declared and added to SCA, then SCA cannot assess condominium fees and impose liens against the property. There is no dispute that SCA cannot assess the disputed fees, force participation in the rental program, or foreclose upon any liens in connection with these fees unless the disputed units were declared and added. SCA contends that Units 60-61 and 64-66 were declared and added by virtue of the Phase IV Plan.

The undisputed facts of this case are that Units 60-61 and 64-66 were never validly declared and added to SCA. First Coast holds development rights to add units to SCA. *See* 33 M.R.S. § 1602-105(8)(a). "To exercise any development right ... the declarant shall prepare, execute and record an amendment to the declaration" and create a new plat and plan. 33 M.R.S. §§ 1602-109, 1602-110. An amendment to the Declaration is separate and distinct from a plat and plan. *See id.* Additionally, an amendment to the declaration must ... reallocate the allocated interests among all units." 33 M.R.S. § 1602-110. There have been eleven amendments to the Declaration, each including an Exhibit B reallocating the allocated interests amount the units. Nowhere in these amendments does SCA allocate percentage of the common expenses and voting rights to First Coast as owner of the disputed units. Accordingly, there is no dispute that Units 60-61 and 64-66 were never declared and added in a valid amendment to the Declaration.

### a. Compliance with the Maine Condominium Act

Alternatively, SCA claims that the Declaration does not comply with the Maine Condominium Act. Under the Maine Condominium Act,

> *The declaration for a condominium contains*: ... A description of any development rights and other special declarant rights, section 1601-103, paragraph (25), reserved by the declarant, together with a legally sufficient description of the real estate to which each of those rights applies, and *a time limit* within which each of those rights must be exercised ...

33 M.R.S. § 1602-105(a)(8) (emphasis added). SCA claims that the failure to include a time limit for First Coast's development rights render the rights void.

In *Silverview at Overlook, LLC v. Overlook at Mt. Crested Butte, LLC*, the Colorado Court of Appeals addressed whether development rights in a condominium declaration are void ab initio where the drafter failed to include a time limitation. 97 P.3d 252, 254-55 (Colo. Ct. App. 2004). The court in *Silverview* interpreted Colorado's version of the Uniform Condominium Act, the Colorado Common Interest Ownership Act ("CCIOA"), which enumerated certain components of a valid condominium declaration. The CCIOA stated that a "declaration *must* contain ... [a] description of any development rights and other special declarant rights reserved by the declaration, together with a description sufficient to identify the real estate to which each of those rights applies and the time limit within which each of those rights must be exercised." *Id*. at 255 (emphasis original). The court found that the use of the word "must" indicated that the time requirement was mandatory. *Id*. Accordingly, the omission of a time limitation rendered the development rights void. *Id*. at 257.

Unlike the statute in *Silverview*, the Maine Condominium Act does not contain the same mandatory language. The court will interpret a statue with "the primary purpose of giving effect to the intent of the Legislature." *Davis Forestry Prods, Inc. v.*

6

*DownEast Power Co., LLC*, 2011 ME 10, ¶ 9, __ A.3d __ (citing *Yeadon Fabric Domes, Inc. v. Me. Sports Complex, LLC*, 2006 ME 85, ¶ 13, 901 A.2d 200, 205). "In determining the Legislature's intent, 'we look first to the plain meaning of the statute, and second, if there is any ambiguity, to extrinsic sources, such as legislative history.'" *Davis Forestry Prods, Inc.*, 2011 ME 10, ¶ 9, __ A.3d at __ (citing *City of Bangor v. Penobscot Cnty*, 2005 ME 35, ¶ 9, 868 A.2d 177, 180; *L'Heureux v. Michaud*, 2007 ME 149, ¶7, 938 A.2d 801, 803 ("Statutory language is ambiguous if it is reasonably susceptible to multiple interpretations.")). "'All words in a statute are to be given meaning, and none are to be treated as surplusage if they can be reasonably construed.'" *Davis Forestry Prods, Inc.*, 2011 ME 10, ¶ 9, __ A.3d at __ (quoting *Allied Res., Inc. v. Dep't of Pub. Safety*, 2010 ME 64, ¶ 15, 999 A.2d 940, 944 (quotation marks omitted)).

The notable omission of the word "must" indicates that the Legislature did not intend to make a time limit on development rights mandatory. *Cf.* 33 M.R.S. § 1602-109 ("Each plat must show . . . [t]he location and dimensions of all easements serving or burdening any portion of the condominium.") Accordingly, First Coast's development rights are valid despite the absence of a time limit in which to exercise those rights.[2]

---

[2]      The Declaration states that "[t]he condominium units may be added in one or more phases." (Declaration § 15.2(a) at 29.) "The interpretation of a contract, including whether or not its terms are ambiguous, is a question of law that we review de novo." *Farrington's Owners' Assoc.*, 2005 ME 93, ¶ 10, 878 A.2d at 507 (citing *Levine v. KeyBank Nat'l Ass'n*, 2004 ME 131, ¶ 30, 861 A.2d 678, 686). "The interpretation of ambiguous language in a contract, however, is a question of fact." *Farrington's Owners' Assoc.*, 2005 ME 93, ¶ 10, 878 A.2d at 507 (citing *Acadia Ins. Co. v. Buck Constr. Co.*, 2000 ME 154, ¶ 8, 756 A.2d 515, 517). "'Language is considered to be ambiguous if it is reasonably susceptible to different interpretations.'" *Farrington's Owners' Assoc.*, 2005 ME 93, ¶ 10, 878 A.2d at 507 (quoting *Acadia Ins. Co.*, 2000 ME 154, ¶ 9, 756 A.2d at 517).

Contrary to SCA's claim, the word "phases" is unambiguous. "Phases" means "[a] distinct stage of development." Webster's II New College Dictionary 824 (2001). "The plain language of a contract should not be 'stretched or tortured to provide meaning sufficient' to advance one party's interpretation." *Farrington's Owners' Assoc.*, 2005 ME 93, ¶ 12, 878 A.2d at 508 (quoting *Augusta v. Quirion*, 436 A.2d 388, 394 (Me. 1981)). Here, the plain language of the Declaration allows First Coast to develop in distinct stages, which it has done for several years. SCA cannot now claim that its agreement with First Coast is ambiguous.

7

SCA also claims that the Declaration fails to comply with 33 M.R.S. § 1602-105(9).

Section 1602-105(9) states:

> The declaration for a condominium contains: . . . If any development right may be exercised with respect to different parcels of real estate at different times, a statement to that effect together with:
> i) Either a statement fixing the boundaries of those portions and regulating the order in which those portions may be subjected to the exercise of each development right, or a statement that no assurances are made in those regards; and
> ii) A statement as to whether, if any development right is exercised in any portion of the real estate subject to that development right, that development right must be exercised in all or in any other portion of the remainder of that real estate.

33 M.R.S. § 1602-105(9). The Declaration states that "[t]he Declarant reserves the right to create up to a total of 53 cottage condominium units and 14 motel condominium units to the premises." (Declaration § 15.2(a).) However, as mentioned above, the absence of the word "must" indicates that such information is not mandatory. Additionally, the statement that development rights may be exercised in phases satisfies 33 M.R.S. § 1602-105(9).

### b. Resale Certificates

First Coast asserts that SCA cannot assess past dues greater than the amount listed on the resale certificates. A resale certificate is a statement, issued "before execution of any contract for sale of a unit, or otherwise before conveyance," which includes, among other things, information about fees due to the condominium association. 33 M.R.S. § 1604-108(a)(3). Under the Maine Condominium Act, "[a] purchaser is not liable for any unpaid assessment or fee greater than the amount set forth in the certificate prepared by the association." 33 M.R.S. § 1604-108(c). There are no resale certificates for Units 60-61 and 64-66 though the Phase IV Plan had been on record for two years. Accordingly, SCA is not entitled to an amount greater than the resale certificates if in when they are issued.

8

### III. Easement

The second issue is whether SCA has an easement to the particular location of its rental office by virtue of the plats and plans incorporated in the Declaration. SCA claims that it has an express or implied easement to the location of the Office.[3] First Coast acknowledges that SCA currently occupies portions of the White House for use as its office. First Coast also acknowledges that SCA has occupied portions of the White House as its office at all times relevant to this suit. First Coast also acknowledges that, pursuant to the applicable town ordinances, it has a duty to provide an office for SCA that must meet the standards provided by those ordinances for such an office. First Coast claims, however, that SCA has no easement to the particular location of the office. First Coast claims that SCA has nothing more than a contractual right to have an office, and not an easement to a particular location.[4]

#### a. Express Easement

The court agrees that SCA does not have an express easement based on the unambiguous language of the Declaration. Pursuant to 33 M.R.S. § 1602-105(a)(13), easements must be specifically recorded. Under the Declaration, Article 6, which is entitled "Easements" there is no easement right to the White House. (Declaration § 6.) Nothing in Article 6 provides for any easements held by SCA requiring First Coast to provide space for use of its Office in the White House. (Declaration § 6.1-6.5.) Accordingly, SCA does not have an express easement to the location of the office.

---

[3]   SCA does not claim that is has a prescriptive easement or an easement by necessity.

[4]   Whether First Coast has a right to relocate the easement, if one exists, is not at issue in this case.

9

## b. Implied Easement

SCA claims that it has an implied easement by virtue of the plan and plans incorporated into the Declaration and the site review plans submitted to the Town of Wells, as well as the Public Offering Statement.[5]

> In order to establish the existence of an implied quasi-easement at the summary judgment stage, there must be no genuine issue of material fact with respect to the following elements: "(1) the property when in single ownership [was] openly used in a manner constituting a 'quasi-easement,' as existing conditions on the [conveyed] land that are apparent and observable and the retention of which would clearly benefit the land [retained]; (2) the common grantor, who severed unity of title, . . . manifested an intent that the quasi-easement should continue as a true easement, to burden the [conveyed] land and to benefit the [retained] land; and (3) the owners of the [retained] property . . . continued to use what had been a quasi easement as a true easement."

*Connolly v. Me. Cent. R.R. Co.*, 2009 ME 43, ¶ 8, 969 A.2d 919, 921-22 (quoting *Northland Realty, LLC v. Crawford*, 2008 ME 92, ¶ 13, 953 A.2d 359, 364). First Coast asserts that there is no manifest intent to maintain an easement and therefore SCA's claim necessarily fails.

Viewing the facts in a light most favorable to the non-moving party, as the court must at this stage in the proceedings, there is a dispute as to whether the grantor intended to create a true easement to the location of the office. Despite the language in the Declaration, the Site Plan Approval submitted to the Town of Wells states that "[t]he motel office will continue to be located in the house." (Ex. R; Ex. S.) The subsequent phased plans reference the Site Plan. The recorded plans became part of the Declaration, thus contradicting the language in the Declaration to the contrary. *See Connolly*, 2009 ME 43, ¶ 9, 969 A.2d at 922; *but see* 33 M.R.S. §§ 1602-109, 1602-110

---

[5] SCA cites to the same evidence to support a claim of an express or implied easement. The plats and plans incorporated in the Declaration, as well as the site plan and the public offering statement support an implied easement more than an express easement. The plain and unambiguous language of the Declaration indicates that there is no express easement to a particular office location.

(distinguishing plans and plats from a valid amendment to the Declaration). Accordingly, there is a dispute as to whether SCA has an implied easement to the location of the office.

## IV. Unjust Enrichment

First Coast claims that SCA cannot succeed on an unjust enrichment claim because there is a statutory right to recovery under the Maine Condominium Act, 33 M.R.S. § 1603-107(b). To sustain a claim for unjust enrichment, the plaintiffs must prove "that [they] conferred a benefit on the other party . . . that the other party had appreciation or knowledge of the benefit . . . and . . . that the acceptance or retention of the benefit was under such circumstances as to make it inequitable for it to retain the benefit without payment of its value." *Forrest Assocs. v. Passamaquoddy Tribe*, 2000 ME 195, ¶ 14, 760 A.2d 1041, 1046 (internal quotations omitted) (citation omitted). "Unjust enrichment describes recovery for the value of the benefit retained *when there is no contractual relationship*." *In re Wage Payment Litig. v. Wal-Mart Stores, Inc.*, 2000 ME 162, ¶ 19, 759 A.2d 217, 224 (internal quotations omitted) (citations omitted) (emphasis in original). Unlike when there is an existing contractual relationship, there is no case law that precludes an unjust enrichment claim if there is a potential statutory remedy.

## CONCLUSION

For the foregoing reasons, First Coast's motion for summary judgment on Counts I, III, and V of SCA's complaint and on Counts I and II of First Coast's counterclaim is GRANTED because Units 60-61 and 64-66 were never declared and added to SCA and therefore cannot be assessed fees, be forced to participate in the rental program, or be the subject of a foreclosure action on the basis of unpaid assessments. First Coast's motion for summary judgment on Count IV of First Coast counterclaim will be DISMISSED as moot.

11

First Coast's motion for summary judgment on Count II of SCA's complaint and Count III of its counterclaim will be DENIED because there is a dispute as to whether SCA has an implied easement to the particular location of its office.

First Coast's motion for summary judgment on Count VI of SCA's complaint is DENIED because there is a dispute as to whether First Coast was unjustly enriched.

Dated:     July/9 , 2011

G. Arthur Brennan
Justice, Superior Court

ATTORNEYS FOR PLAINTIFF:
CHRISTIAN CHANDLER, ESQ.
SIDNEY THAXTER, ESQ.
CURTIS THAXTER STEVENS BRODER & MICOLEAU
PO BOX 7320
PORTLAND ME   04112-7320

THOMAS MCKEON, ESQ.
RICHARDSON WHITMAN LARGE & BADGER
PO BOX 9545
PORTLAND ME   04112-9545

ATTORNEY FOR DEFENDANT FIRST COAST REALTY & DEVELOPMENT LLC :
PAUL DRISCOLL
NORMAN HANSON & DETROY
PO BOX 4600
PORTLAND ME   04112-4600

ROBERT NEAULT
ROBERT M NEAULT & ASSOCIATES PA
PO BOX 1575
68 ROOSEVELT TRAIL
NAPLES ME   04055

ATTORNEY FOR DEFENDANT TWO LIGHTS FUNDING LLC:
JOHN MCVEIGH
PRETI FLAHERTY BELIVEAU PACHIOS & HALEY
PO BOX 9546
PORTLAND ME   04112-9546

ATTORNEYS FOR PARTIES-IN-INTEREST:
JONATHAN BROGAN (ST JEANS CREDIT UNION)
DAVID GOLDMAN
NORMAN HANSON & DETROY
PO BOX 4600
PORTLAND ME   04112-4600

ATTORNEY FOR PARTY-IN-INTEREST:
PD INDUSTRIES INC
F DAVID WALKER, IV
PO BOX 1401
BANGOR ME   04402-1401