STATE OF MAINE
AROOSTOOK, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CARSC-RE-17-030

BRIAN CARON and
LOUISE CARON,

      Plaintiffs,

v.

J. RUSSELL BOUCHER and
VICKY BOUCHER,

      Defendants/Counterclaim
      Plaintiffs.

BRIAN CARON and
LOUISE CARON,

      Third-Party Plaintiffs,

v.

PAULA OUELLETTE,

      Third-Party Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**ORDER ON DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT**

On January 31, 2018, Defendants J. Russell Boucher and Vicky Boucher ("Bouchers")

filed a Motion for Summary Judgment, on the ground that they are entitled to judgment as a matter

of law on Count I of their Counterclaims against the Plaintiffs, Brian Caron and Louise Caron

("Carons"). More specifically, the Bouchers claim that the Court should order that the Bouchers

have an implied easement over and along an existing roadway that presently lies on a 66-Foot Strip

of land owned by the Carons. Based on the record and the law, the Court cannot do so. A trial

will be necessary.

BACKGROUND

The Bouchers filed a Statement of Material Facts. Of these, the following (¶¶ 1-6, 10) were admitted by the Carons:

The Bouchers own certain land and buildings in Fort Kent, Maine. The land is described in deeds from Eric Scott to J. Russell Boucher, dated June 10, 2003 and recorded in the Northern District Aroostook Registry of Deeds ("NDARD") in Book 1355, Page 25, and from J. Russell Boucher to J. Russell Boucher and Vicky G. Boucher, dated July 22, 2003 and recorded in the NDARD in Book 1362, Page 314, ("Lot 44"). (Defendants' Statement of Material Facts ("D.S.M.F.") ¶ 1.) Lot 44 is shown as Lot 9 on the Town of Fort Kent Tax Map 10. (*Id.* ¶ 2.)

The Carons own a 66-Foot Strip of land located in Fort Kent, Maine. This land is described in deeds from Paula Ouellette to Brian and Louise Caron, dated June 27, 2012 and recorded in the NDARD in Book 11769, Page 251 ("the 66-Foot Strip"). (*Id.* ¶ 3.) The 66-Foot Strip adjoins Route 161/Caribou Road to the east and property now or formally of Phil LeBoeuf/Emile LeBoeuf to the west. (*Id.* ¶ 4.)

From 1969 to October 29, 1992, Donald A. Baker owned fee title to Lot 44. (*Id.* ¶ 5.) From November 18, 1977 to August 28, 1998, Donald A. Baker owned fee title to the 66-Foot Strip. (*Id.* ¶ 6.)

The Bouchers allege that since the early 1980's the 66-Foot Strip contained a roadway which served as access to Lot 44 and the abutting property of Emile LeBoeuf to the north. (*Id.* ¶ 7.)[1]

---

[1] The Carons "deny that the 66[-F]oot [S]trip served as access to Donald Baker's Lot 44 but admit that it served as access to Donald Baker's property to the north, namely Lot 46 and Lot 45." (Plaintiffs' Opposing Statement of Material Fact ("P.O.S.M.F.") ¶ 7.) (alterations added).

2

The Bouchers also alleged, and the Carons denied, that on September 3, 1992 and on October 23, 1992, prior to Donald A. Baker's October 29, 1992 sale of Lot 44, Donald A. Baker and Emile LeBoeuf exchanged easements to provide and confirm legal access from Route 161, across the existing roadway of the 66-Foot Strip for the benefit of the LeBoeuf property and Lot 44. (D.S.M.F. ¶ 8.)

According to the Bouchers, on October 23, 1992, Donald A. Baker conveyed Lot 44 to Eric Scott along with the easement he received from LeBoeuf (*Id.* ¶ 9.)[2]

At the time of his sale of Lot 44 to Eric Scott, Donald A. Baker still retained title to the 66-Foot Strip. (D.S.M.F. ¶ 10.)

The Bouchers also alleged, and the Carons denied, the following facts (¶¶ 11-14):

At the time of Donald A. Baker's sale of Lot 44 to Eric Scott, the 66-Foot Strip and the roadway contained upon it served as access to Lot 44. (*Id.* ¶ 11.)

At the time of his sale of Lot 44 it was Donald A. Baker's intent to convey access to Lot 44 over the 66-Foot Strip and the roadway contained upon it. (*Id.* ¶ 12.)

At the time of his purchase of Lot 44 it was Eric Scott's intent to receive access to Lot 44 over the 66-Foot Strip and the roadway contained upon it. (*Id.* ¶ 13.)

To the extent the October 29, 1992 conveyance of Lot 44 from Baker to Scott failed to convey an expressed easement over the 66-Foot Strip for the benefit of Lot 44, that failure was a result of a mutual mistake of the parties to the deed. (*Id.* ¶ 14.)

---

[2] The Carons "deny any implication that the deed from Baker to Scott . . . contained any rights to the 66[-F]oot [S]trip." (P.O.S.M.F. ¶ 9.) (alterations added).

3

The Carons also denied the following statement to the extent it asserted any use by Eric Scott:

Prior to the Carons' purchase of the 66-Foot Strip, Eric Scott and the Bouchers utilized the 66-Foot Strip for purposes of general access to Lot 44, gravel pit operations, logging, the construction of a pond, the construction of a summer residence and general recreational activity. (D.S.O.M.F. ¶ 15.)

## ANALYSIS

Summary judgment is appropriate when there are no genuine issues of material fact, and a party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *Estate of Davis*, 2001 ME 106, ¶ 7, 775 A.2d 1127. "The summary judgment process, however, is not a substitute for trial. If material facts are disputed, the dispute must be resolved through fact-finding . . .." *Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18. "A fact is material when it has the potential to affect the outcome of the suit." *Kenny v. Department of Human Services*, 1999 ME 158, ¶ 3, 740 A.2d 560 (citation omitted). "An issue is genuine if sufficient evidence supporting the claimed factual dispute exists to require a choice between the parties' differing versions of the truth at trial." *Id.* (citation omitted). Because material facts are in dispute in the case at hand, the Bouchers' Motion must be denied.

The Bouchers contend that an implied easement exists over the 66-Foot Strip as a matter of law. In *Frederick v. Consolidated Waste Services, Inc.*, 573 A.2d 387 (Me. 1990), the Law Court stated:

> In order for such an implied easement to be recognized (1) the "property when in single ownership [must have been] openly used in a manner constituting a 'quasi-easement,'" (defined . . . as existing conditions on the retained land that are apparent and observable and the retention of which would clearly benefit the land conveyed); (2) the common grantor, who severed unity of title, must have "manifested an intent that the quasi-easement should continue as a true easement," to burden the retained land and to benefit the conveyed

4

land; and (3) the owners of the conveyed land must have continued to use what had been a quasi-easement as a true easement.

*Frederick v. Consolidated Waste Services, Inc.,* 573 A.2d 387, 389-90 (Me. 1990) (citation omitted) (alterations added and in original).

Real questions of fact remain unresolved here as to what actual use, if any, Mr. Baker made of the 66-Foot Strip to access Lot 44 before the conveyance to Mr. Scott, and what use, if any, Mr. Scott made of it after the conveyance to access Lot 44.

In this regard, the Court concludes that there are, indeed, genuine issues as to material facts which preclude the grant of summary judgment. *Cf., Connolly v. Me. Cent. R.R. Co.,* 2009 ME 43, ¶ 9, 969 A.2d 919 ("There is a dispute of material fact as to at least one necessary element of proof for an implied quasi-easement . . ..") (alterations added). In contrast to *Connolly,* not one but at least two necessary elements are in dispute.

The Bouchers offer the Affidavits of Donald A. Baker and Eric Scott. In his Affidavit, Mr. Baker states that at the time of the conveyance to Mr. Scott, it was Mr. Baker's intention to convey access to Lot 44 over the 66-Foot Strip and the roadway contained upon it. (Donald Baker Aff. ¶ 15.) According to Mr. Baker, at the time of this conveyance, Mr. Baker understood that Mr. Scott intended to obtain such access. (*Id.* ¶ 16.) Finally, per Mr. Baker, "In the event my deed to Eric Scott failed to convey a legal right of way across the 66[-]Foot Strip that failure or error was an unintentional mistake of me and Eric Scott. (*Id.* ¶ 17.) (alteration added).

Lacking in Mr. Baker's Affidavit is any real detail as to how he actually utilized the 66-Foot Strip to access Lot 44, if at all. Such facts would be highly relevant to the legal standard for establishing an implied easement.

5

In his Affidavit, Mr. Scott made similar statements:

. . .

5. At the date of my purchase I understood that the legal access to the Lot 44 Property was along a 66[-]Foot Strip [of] Land retained by Donald Baker;

6. At the time of my purchase until my sale of the Lot 44 Property, the 66[-]Foot Strip of Land contained a roadway which served as access to my Lot 44 Property and the abutting property of Emile LeBoeuf to the north of the Lot 44 Property;

. . .

8. At the time of my purchase of the Lot 44 property it was my intent to obtain legal access for the benefit of [the] Lot 44 Property to the public Route 161 from Donald Baker over the 66[-]Foot Strip and the roadway contained upon it;

9. I would not have purchased the Lot 44 Property from Donald Baker as a property without legal access over the 66[-]Foot Strip to Route 161.

10. At the time of the sale my understanding was that Donald Baker intended to provide legal access to the Lot 44 Property over the 66-[F]oot Strip and the roadway contained upon it;

11. In the event my acceptance of the deed to the Lot 44 Property from Donald Baker failed to convey a legal right of way across the 66[-]Foot Strip to Route 161 that failure or error was an unintentional mistake of me and Donald Baker.

(Eric Scott Aff. ¶¶ 5-6, 8-11.) (alteration added).

Absent from Mr. Scott's Affidavit is any detailed statements as to the actual use Mr. Scott made, if any, over the 66-Foot Strip after his acquisition of Lot 44. On this point, the Boucher's Statememt of Material Facts includes the following:

Prior to the Carons' purchase of the 66-Foot Strip, Eric Scott and the Bouchers utilized the 66-Foot Strip for purposes of general access to Lot 44, gravel pit operations, logging, the construction of a pond, the construction of a summer residence and general recreational activity.

(*Id.* ¶ 15.)

Yet, whereas Mr. Boucher makes such a statement in his Affidavit as to his own activities, he does not so refer to Mr. Scott in this context. (J. Russell Boucher Aff. ¶ 7.) And Mr. Scott's

Affidavit includes no such statement concerning "gravel pit operations, logging, the construction of a pond, the construction of a summer residence and general recreational activity." If Mr. Scott made such actual uses of the 66-Foot Strip, or other uses, the record on summary judgment lacks adequate support.

These factual infirmities support the Court's conclusion that additional factfinding is warranted, given the applicable legal standard for establishing the existence of an implied easement. Indeed, the Court concludes that trial testimony and the opportunity to assess the credibility of the pertinent witnesses will be necessary.

In the case at hand, the Carons point to a number of material facts they assert are in dispute as to at least use. For example, according to the Affidavit of Mr. Caron, he never saw Mr. Baker actually use the 66-Foot Strip. (Brian Caron Aff. ¶ 16.)

Mr. Caron also contends that he never observed Eric Scott using the 66-foot strip to access Lot 44, either, after Mr. Scott purchased Lot 44 in 1992. (*Id.* ¶ 17.) With regard to Eric Scott, Mrs. Caron stated in her Affidavit as follows:

> During all the time I have resided at my home on Route 161, I have never seen Eric Scott on the 66[-F]oot [S]trip next to my home or seen any evidence of his using that strip. The road on the 66[-F]oot [S]trip goes to Lot 45. It is immediately next to the edge of our front lawn.

(Louise Caron Aff. ¶ 10.) (alterations added).

In a Reply Brief, the Bouchers contend at some length that the Caron Affidavits are deficient because they contain hearsay and fail to demonstrate personal knowledge sufficient to create an issue of fact. The Court finds no such defects in the statements quoted or referenced above. They are quite obviously statements based on the Carons' personal knowledge. The Carons are and will be entitled to testify as to what they themselves observed or, perhaps more to the point, did not observe. Likewise, Mr. Baker and Mr. Scott will need to testify as to their actual uses, if

7

any, of the 66-Foot Strip to access Lot 44.

In any event, the record here discloses that genuine issues of material fact remain and summary judgment as to the existence of an implied easement over the 66-Foot Strip is not warranted. Consequently, the Court must deny the Bouchers' Motion.[3]

The entry is:

1. Defendant's (Counterclaim Plaintiff's) Motion for Summary Judgment is **DENIED**.
2. The Clerk is directed to incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

Dated: June 29 '18

The Hon. Harold Stewart
Justice, Maine Superior Court

---

[3] This Order only addresses Count I of the Bouchers' Counterclaim (implied easement). The Carons, in rather cursory fashion—seemingly as an afterthought--suggest summary judgment in their favor is appropriate as to Count II of the Bouchers' Counterclaim (prescriptive easement). To the extent they believe this to be the case, they are free to file a separate Motion with appropriate supporting documents and necessary references to the record.