1998 ME 226

**John J. ALEXANDER, Jr. et al.**

v.

**FAIRWAY VILLAS, INC., et al.**

v.

**The WOODLANDS HOMEOWNERS ASSOCIATION.**

Supreme Judicial Court of Maine.

Argued Feb. 2, 1998.
Decided Oct. 2, 1998.

Arnold Macdonald (orally), George F. Burns, Burns Ray & Delano, Portland, for plaintiffs.

Ralph I. Lancaster (orally), Peter W. Culley, Christopher T. Roach, Pierce Atwood, Portland, for Fairway Villas, Inc., Golf Development Corp., et al.

Paul R. Johnson (orally), Harrison L. Richardson, Richardson, Whitman, Large & Badger, P.C., Portland, for The Woodlands Homeowners Ass'n.

Before WATHEN, C.J., and ROBERTS *, CLIFFORD, RUDMAN, DANA, LIPEZ **, and SAUFLEY, JJ.

* Roberts, J., sat at oral argument and participated in the initial conference while he was a Justice, and, on order of the Chief Justice, was authorized to continue his participation in his capacity of Active Retired Justice.

** Lipez, J., sat at oral argument, but did not participate further.

RUDMAN, Justice.

[¶ 1] Golf Development Corp. (GDC),[1] the developer of "The Woodlands," a residential subdivision in Falmouth, appeals from the judgment of the Superior Court (Cumberland County, *Mills, J.*) declaring that GDC is not entitled to use the subdivision's roadways for access to and development of an adjacent parcel of land. We disagree and vacate the judgment.

## I. Background

[¶ 2] In 1986 and 1987, GDC purchased a large parcel of real estate in Falmouth and developed the larger northern portion into "The Woodlands," a subdivision consisting of ninety-five residential house lots, a private roadway system, and a private golf club known as "The Woodlands Club." A smaller southern portion of the original parcel, known as "the Commercial Zone," remains undeveloped and is presently accessible only through the private roadway system of The Woodlands.

[¶ 3] GDC established The Woodlands by recording a subdivision plan and a document entitled "A Declaration of Common Easements, Restrictions, Covenants and Reservations of Rights Affecting the Subdivision Called The Woodlands" (Declaration). The Declaration, by its terms, was "to be incorporated by reference hereto in each deed conveying any interest in property in the Subdivision[.]" Pursuant to the Declaration, GDC was to create a "Common Space" within the subdivision, consisting of the private roadway system, storm water control facilities, a golf course and driving range, and other common use improvements. The Declaration further provided that, following the sale of 75% of the house lots, GDC was to deed the Common Space to the Woodlands Homeowners Association (Association), a nonprofit corporation, whose members are all subdivision lot owners. The Association is charged with administering and enforcing the Declaration's provisions.[2] Finally, the Declaration provided that GDC's conveyance of the Common Space to the Association was to be "subject to those encumbrances specified herein."

[¶ 4] GDC began to sell lots in the subdivision in 1987. Each lot owner's deed conveyed an individual lot and expressly provided that the conveyance was made subject to the provisions of the Declaration. In 1993, after selling 75% of the house lots, GDC conveyed the Common Space, including the roadways, to the Association in a deed containing the following reservation:

EXCEPTING AND RESERVING, to the Grantor, for itself and its successors and assigns, the right to use all roads and rights-of-way and emergency access ways as depicted or referenced on the Subdivision Plan or described in the Declaration for any future development and for the use, maintenance and enjoyment of or relating to [the Commercial Zone].... The Rights reserved by Grantor in this paragraph in and to such roads, rights-of-way and emergency access ways shall specifically include the right, and Grantor is hereby permitted, to reassign and/or grant to others, the right to use any such roads, rights-of-way and emergency access ways.

[¶ 5] In May 1995, the owners of four lots in the subdivision filed a four-count complaint for declaratory relief pursuant to 14 M.R.S.A. §§ 5951–5963 (1980) to establish their rights with respect to the subdivision roadways and to establish that GDC is not entitled to use those roadways for access to or development of the Commercial Zone.[3]

---

1. Fairway Villas, Inc. and Fairway Villas Owners Association are also appellants of record with interests identical to those of GDC for the purposes of this appeal. Fairway Villas, Inc. owns an option to purchase the property at issue in this case, and Fairway Villas Owners Association is the homeowners association for the condominiums that GDC plans to develop on that property.

2. The Declaration also required the Association to execute a long-term lease of the golf course and the driving range to the Woodlands Club.

3. Count I alleged that GDC's deed to the Association had been improperly executed and delivered and was therefore invalid to the extent that it

Shortly after the lot owners filed their complaint, GDC moved to compel joinder of, *inter alia*, the Association as a necessary party pursuant to M.R.Civ.P. 19(a). The lot owners responded by moving to amend their complaint to narrow their requested relief to a declaration concerning GDC's rights relative to the roadways. This specific declaration, they argued, would eliminate the need for any joinder because it would have "no bearing on the property interests of any person or organization not now a party[.]" In April 1996, the court granted the lot owners leave to amend their complaint and denied GDC's motion to compel joinder.[4]

[¶ 6] Upon the parties' cross motions for summary judgment, the court granted judgment to the lot owners with respect to counts I, II, and IV of their complaint, ruling, inter alia: (1) that "[t]he Declaration does not reserve to [GDC] or its successors or assigns the right to use the roads for future development of the Commercial Zone"; and (2) that "[t]he Deed from [GDC] to the Association is declared invalid to the extent that it purports to reserve the above-listed rights to [GDC]." The court did not reach the breach of fiduciary duty claim at that time.

[¶ 7] GDC then filed a third-party complaint against the Association, seeking declaratory relief that GDC had a right to use the roadways by virtue of an easement by necessity, an easement by implication, an easement from recorded plan, and a cost-sharing and joint-use agreement concerning the roadways entered into by the Association and the Fairway Villas Owners Association. GDC also moved to amend its third-party complaint to join additional parties and add several counts. The lot owners responded by moving to dismiss count III of their original complaint and moving to dismiss GDC's third-party complaint. The Association, as

third party defendant, also moved to dismiss GDC's third-party complaint. The court denied GDC's motion to amend and dismissed count III and the third-party complaint. Hence, the only claim adjudicated was the individual lot owners' request for a declaration that GDC was precluded by the Declaration from using the roads to develop and access the Commercial Zone. This appeal followed.

## II. The Lot Owners' Rights

■ [¶ 8] The lot owners base their entitlement to seek relief in this case on two sources. First, the purchasers of lots in a subdivision obtain an easement by implication in the common roads. *See Chase v. Eastman*, 563 A.2d 1099, 1101 n. 2 (1989).[5] Second, the incorporation of the Declaration into the lot owners' deeds created enforceable contractual rights between the lot owners and GDC. *See DeWolf v. Usher Cove Corp.*, 721 F.Supp. 1518, 1527 (D.R.I.1989) (The general rules governing construction of such Declarations are essentially the same as those applicable to any contract.). That contract bound both parties and expressly required GDC to transfer the Common Spaces to the Homeowners Association "following the sale of Seventy–Five Percent (75%) of the lots in the subdivision subject to those encumbrances specified [in the Declaration]."

[¶ 9] Accordingly, the lot owners may seek to enjoin GDC's use of the roads to the extent that: (1) the proposed use unreasonably interferes with their own easement (whether created by the contract or by common law); or (2) the proposed use conflicts with the Declaration. The lot owners did not assert that the use intended by GDC would unreasonably interfere with their own use of

---

reserved roadway rights to GDC; count II alleged that the Declaration did not give GDC the right to use the subdivision's roadways; count III alleged that GDC breached its fiduciary duty to the lot owners by executing and delivering its deed to the Association, thereby invalidating the deed to the extent that it reserved roadway rights to GDC; and count IV alleged that the Declaration rendered GDC's deed to the Association invalid to the extent that it reserved roadway rights to GDC.

4. Although GDC renewed its motion to compel joinder, the court issued no further rulings concerning the joinder issue.

5. An identical easement was expressly created by the Declaration, to become effective upon transfer of the fee to the Association. (Art. II(1)).

the roads.[6]  Rather, they argued that GDC promised to deed the roads to the Association unencumbered by any remaining interest in GDC.

[¶ 10] GDC argues that, notwithstanding its agreement to transfer the Common Spaces to the Association, it retained the right as fee owner of the roads to transfer the roads under whatever terms and conditions it chose.[7]  The Declaration, however, bound GDC to undertake the transactions promised therein.  Although GDC remained the fee owner, that ownership became encumbered by the terms and conditions of the Declaration upon sale of the lots.  The Declaration, incorporated in the deeds and constituting part of the lot owners' bargain with GDC, is subject to the rules of interpretation of any contract.[8]  Upon incorporation into the purchasers' deeds, the Declaration's terms became binding upon the grantor-developer as well as the purchasers and their heirs and assigns.  GDC did not remain free to dispose of the Common Spaces except as consistent with the Declaration.  We therefore turn to the language of the Declaration.

### III.  The Declaration

[¶ 11] As a contract, the Declaration must be interpreted to effect the parties' intentions as reflected in the written instrument, construed with regard for the subject matter, motive, and purpose of the agreement, as well as the object to be accomplished.  *See Bumila v. Keiser Homes of Maine, Inc.*, 1997 ME 139, ¶ 12, 696 A.2d 1091, 1094.  It must be interpreted as a whole.  *See Bartley v. Eastern Maine Med. Ctr.*, 617 A.2d 1020, 1022 (Me.1992); *Benedix v. Boston Old Colony Ins. Co.*, 417 A.2d 453,

455 (Me.1980); *Forbes v. Wells Beach Casino, Inc.*, 307 A.2d 210, 216 (Me.1973).  The issue presented here is whether GDC contracted to fully relinquish its rights to use the roads within the Woodlands Subdivision to the Association, thereby precluding it from reserving any right to use the roads when it deeded the common space to the Association.  Although each of the parties agreed that the Declaration could be interpreted by the court without reference to extrinsic facts, both parties submitted affidavits and depositions on the question of intent.  The court, however, agreed with the parties that extrinsic evidence was not necessary to its interpretation of the contract.  Because the trial court interpreted the contract from the language of the document alone, we review the court's interpretation de novo.  *See Maine State Employees Ass'n v. State Dep't of Corrections*, 593 A.2d 650, 653 (Me.1991).  Although it could be argued that some provisions of the Declaration may be read to create an ambiguity as to the developer's original intent, both parties urged the court to construe the Declaration without relying on extrinsic evidence.  Since the parties consider the issue a question of law, we are not required to show the trial court's decision any particular deference.  We are satisfied that the Declaration and Plan read in their entirety make it abundantly clear that GDC retained the right to use the roadways to develop and access the Commercial Zone.

[¶ 12] The Declaration does not explicitly state that GDC reserves the right to use the Woodland Subdivision roads to develop the Commercial Zone.  We note, however, that GDC owned the road system until it conveyed the roadways and other common space

---

6.  Indeed, if GDC is determined to have reserved the right to use the roads for development, such use, because it was contemplated by the parties at the time of their bargain, would not be unreasonable, unless it actually obstructed access to the lots or otherwise severely impaired the lot owners' use in a manner not anticipated at the time of the lot owners' purchase.

7.  GDC's argument that the lot owners' easement could be deemed exclusive only if such an intent was clearly expressed in the Declaration misses the point.  The lot owners do not claim, and could not claim, an exclusive easement given the existence of rights to use the roads in several

other parties, including the Woodlands Club and Fairway Villas Owners Association.  Rather, the lot owners assert that the contract unambiguously provided for the transfer of the fee in the roads to the Association, free from further right *in GDC* to use the roads.

8.  "The law recognizes the right of parties to contract with relation to property as they see fit. . . .  The rules of construction which apply in construing contractual provisions are equally applicable in construing covenants and restrictions. . . ."  *Scoville v. SpringPark Homeowner's Ass'n, Inc.*, 784 S.W.2d 498, 502 (Tex.Ct.App. 1990).

to the Association. Further, we conclude that several terms of the Declaration unequivocally confirm the parties' intent that GDC retained the right to use the roads for future development. Those terms include the repeated references to the intended future development of the Commercial Zone, the reservation to GDC of a right to move certain roads at or near the entrance to the Commercial Zone, the reference to easements "shown on the Plan" along with the expressed right for GDC to use and modify those easements in furtherance of the development, the reservation to GDC of the rights incident to Association membership inclusive of use of the roads, and the reservation to GDC of the ability to assign its rights to other entities.

[¶ 13] The Declaration then reiterates the express notice of GDC's intention to complete the development of the Commercial Zone. In contemplation of the eventual transfer of the Common Space to the Association, the Declaration provides that "[f]ollowing sale of at least seventy-five (75%) percent of such lots [GDC] shall be entitled to all rights and obligations of members of the Association...." (Art. VII(2)).[9] It describes those rights as follows: "Each member of the Association shall have the right to use such Common Space in common with the other members, subject to those restrictions and encumbrances herein...." (Art. II(1)). The Declaration also reserves to GDC the right to relocate portions of three roads within the Woodlands Subdivision which lead into the Commercial Zone. *Id.* The Declaration explicitly references the Commercial Zone as being denoted on the Plan, and the Plan incorporates the Commercial Zone.

[¶ 14] In contemplation of further development, the Declaration then reserves to GDC the right to assign "any or all of its rights" and, at GDC's option, such assigns shall become members of the Association. (Art. III(4)). As members of the Association, GDC's assigns shall retain all rights "incident to membership in the Association, including without limitation, connections with and use of utilities and use of roadways and easements." (Art. VII(1)(B)).

[¶ 15] Each of these provisions is indicative of an intent on the part of the parties to allow GDC to reserve a right to use the Woodlands Subdivision roads as access to the Commercial Zone. This interpretation is further supported by the Plan's depiction of the Woodlands roads' entry into the Commercial Zone and the absence of other meaningful access to that land on the Plan. Had GDC not intended to use the roads in question in connection with its development of the "Commercial Zone," much of the language contained in the Declaration as to the "Commercial Zone" would be not only superfluous but meaningless. The roads in question pass through GDC's land. The Declaration in no way restricts access to those roads.

[¶ 16] The developer retains title to the commercial zone. The development plan depicts the roads as entering the commercial zone in two specific locations and passing through the zone in another location. The Declaration, subject to which the lot owners took title, specifically reserved to the developer the right to relocate the roads within the commercial zone, thus giving the commercial zone access to the road system within the development. The summary judgment in favor of the lot owners must be vacated and the matter remanded for entry of a declaratory judgment in favor of GDC.

The entry is:

Judgment vacated. Remanded for the entry of a declaratory judgment in favor of Golf Development Corp.

---

9. The lot owners argued to the court that the Deed had never been accepted by the Association. The court declined to address that Issue, but held that even if the Deed had been properly accepted, it "impermissibly purported to alter the property rights of the lot owners."