STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-01-01

ROBERT J. SPRINGBORN and
WENDY P. SPRINGBORN,

Plaintiffs

v.

DECISION AND ORDER

TOWN OF FALMOUTH and
FAIRWAY VILLAS, INC.,

Defendants

## FACTUAL BACKGROUND

In 1986 and 1987, Defendant Fairway Villas, Inc. ("Fairway")[1] purchased property in Falmouth and developed the northern portion into a subdivision known as "The Woodlands."[2] Alexander v. Fairway Villas, Inc., 1998 ME 226, ¶ 2, 719 A.2d 103, 104. Plaintiffs Robert and Wendy Springborn are residents of The Woodlands subdivision. Record ("R.") at 34.

On April 6, 1999, the Town of Falmouth granted preliminary subdivision approval for a 68 unit subdivision known as "The Villas" located south of and adjacent to The Woodlands. Id. at 68. Fairway divided its development of The Villas into two phases. Springborn v. Town of Falmouth, 2001 ME 57, ¶ 5, 769 A.2d 852, 854. Phase I contained 28 units on the west side and Phase II contained 40 units on the east side. Id. Phase II was further divided into Phases II and III.

---

[1] Fairway was created by the merger of Golf Development Corporation ("GDC") and Fairway Villas, Inc.. Springborn v. Town of Falmouth, 2001 ME 57, ¶ 3, 769 A.2d 852, 854. Fairway-GDC was also formerly known as "The Woodlands Corporation." R. at 163.

[2] The Woodlands subdivision was actually developed by GDC. Springborn, 2001 ME 57, ¶ 3, 769 A.2d at 854.

Fairway received final approval for Phase I in December, 1999. R. at 165. This final approval was affirmed by the Law Court on appeal. Springborn, 2001 ME 57, ¶ 1, 769 A.2d at 853. In May, 2000, Fairway applied for final subdivision approval of Phases II and III. R. at 479, 765. The application was amended on October 16, 2000 to request both final subdivision and site plan approval for both phases. Id. at 765.

The final plan for Phases II and III contains a number of modifications from the preliminary plan that were made in response to comments from the Falmouth Planning Board ("Board") and the public at the preliminary approval stage. Id. at 124. These alterations include: (1) decreasing the number of dwellings in both Phases from 40 to 28; (2) reducing the number of units in the area of the 15th and 16th fairways from 15 to 9; (3) changing the plan west of the cul de sac from 19 units comprised of 3 single-family residences and 8 duplexes to 14 units located in 7 multiplex buildings; (4) decreasing the total number of multiplex units in both Phases from 15 to 7; (5) restructuring the previously even distribution of duplexes and single-family units throughout both Phases so that all 7 duplexes are located in Phase II and all single-family units are located in Phase III; and (6) revising the road system to add a new street called Fairway Lane, providing a common driveway to serve the units in Phase II and altering the layout for the extension of Old Oak Way. Id. at 15, 39-40, 71, 96, 124, 766.

The Springborns objected to the application for final approval, contending that (1) the final plan did not substantially conform to the preliminary plan; (2) pursuant to the Falmouth Land Subdivision Ordinance ("Ordinance"), the final

2

plan could not be altered in any way without resubmitting the plan for further Board review and approval; and (3) preliminary approval had lapsed under the terms of the Ordinance because more than six months had passed. Id. at 15, 34-38, 42-45.

On January 2, 2001, the Board granted final subdivision and site plan approval for Phases II and III. Id. at 135. The Board specifically found that the progression of preliminary and final applications for all phases of the project complied with the Ordinance, the final plan for Phases II and III substantially conformed to the preliminary subdivision plan and Fairway's plans meet all applicable codes and ordinances of the Town of Falmouth. Id. at 275; Defs.' Ex. A.

## DISCUSSION

### I. Substantial Conformity

Interpretation of a zoning ordinance is a question of law. Springborn, 2001 ME 57, ¶ 8, 769 A.2d at 855. When interpreting an ordinance, the Court must examine the plain meaning of the language and reasonably construe the terms with regard to the objectives sought to be obtained as well as the general structure of the ordinance as a whole. Id.

The Ordinance provides that the final plan must "conform substantially" to the preliminary plan. Falmouth, Me., Land Subdivision Ordinance (hereinafter cited as "Ordinance") § 7(E)(6) (August, 2000). Because the Ordinance does not define this phrase, it must be given its plain and ordinary meaning. "Substantial" is defined as "being largely but not wholly that which is specified." WEBSTER'S NINTH

3

NEW COLLEGIATE DICTIONARY 1176 (9th ed. 1984). "Conform" is defined as "to be similar or identical." Id. at 276. By its plain and ordinary meaning, then, the phrase "conform substantially," requires the final plan to be largely similar, but not identical, to the preliminary plan. The record reveals that the Board applied an identical interpretation of the phrase. See R. at 70-71, 88.

This interpretation is consistent with the rationale behind requiring both preliminary and final Board approval. Approval of a preliminary plan is merely the Board's expression of approval of the plan's design and is intended as a guide for preparing the final plan. Ordinance § 7(C)(4). When approving a preliminary plan, the Board must identify any required changes to be made in the final plan. Id. § 7(C)(3). The Board may require additional changes as a result of information obtained during public hearings. Id. § 7(C)(4). These provisions reveal the flexibility of the Ordinance in permitting modifications to the preliminary plan.

The Springborns argue that the Board improperly compared the final plan for Phases II and III with the final plan for Phase I rather than the preliminary plan for Phases II and III. The basis for this argument is not supported by the record, however. The minutes from the September 5, 2000 meeting reflect that three of the four Board members considered the final plan to be substantially similar to the previously submitted preliminary plan. R. at 89. None of the four Board members mention the final plan for Phase I in stating their conclusions. Id.

The Springborns argue that the changes to the final plan for Phases II and III materially altered the preliminary plan. The record supports the Board's factual

determination that the final plan substantially conforms with the preliminary plan. See Springborn, 2001 ME 57, ¶ 11, 769 A.2d at 856 (examining whether the evidence supported the Board's factual determination that the proposed subdivision is a "mixed use development" within the meaning of the Town ordinance); Goldman v. Town of Lovell, 592 A.2d 165, 168 (Me. 1991) (stating "whether or not the proposed structure or use meets the definition in the application thereof may be a matter of fact . . ."). Although the final plan contains changes in the number of units, the layout and the road design, it does substantially conform to the preliminary plan. The character of the two Phases has not changed substantially: the final plan reflects a residential subdivision containing a mixture of single family and duplex units.

## II. Approval of the Preliminary Plans

Section 7(E)(1) of the Ordinance provides:

If approved by the Planning Board, the developer may present a section of the Preliminary Plan for approval, provided such section contains at least 25% of the total number of lots as shown on the Preliminary Plan. The remainder of the Preliminary Plan, as approved by the Board, shall not be altered in any way without further review and approval by the Board.

The Springborns argue that this provision requires Fairway to resubmit the plan for further preliminary review and approval if any changes are made. The first sentence of this provision allows for phasing: the developer may present the preliminary plan for a phase of the project if that phase contains the minimum percentage of the total lots. A reasonable interpretation of the second sentence, and

the interpretation adopted by the Board, is that "final subdivision approval of an initial phase of a project does not mean that the remainder of the project is exempt from final subdivision plan review." R. at 79. This interpretation is consistent with the provision's placement in the Ordinance under the "Final Plan Procedures" heading. Id. at 291. Accordingly, Fairway was not required to resubmit its plan for further preliminary review.

## IV. Application for Final Approval

The Springborns argue that Fairway was not entitled to receive final Board approval because it failed to apply for that approval within 6 months of the preliminary approval. The Ordinance provides:

> The subdivider shall, within six (6) months after the approval of the Preliminary Plan, file with the Planning Board an application for approval of the Final Subdivision Plan in the form described herein. If the Final Plan is not submitted to the Planning Board within six (6) months after the approval of the Preliminary Plan, the Planning Board may refuse without prejudice to act on the Final Plan and require resubmission of the Preliminary Plan.

Ordinance § 7(E)(1).

Although the Springborns contend that the Board failed to recognize that this provision applied to Fairway, the record establishes otherwise. The Board interpreted this provision to require Fairway to file the application for approval of the final plan for the initial phase of the project, not all three phases, within 6 months after the approval of the preliminary plan. R. at 70, 89. This interpretation is reasonable in light of the language requiring only *"an* application," as opposed to all applications, be submitted for approval within 6 months. To interpret this

6

provision otherwise would undermine the concept of phasing.

Even if this was not a reasonable interpretation, the Ordinance gives the Board discretion to either accept or reject an application for final subdivision approval filed after the six month deadline.

The entry is

The Springborns' 80B appeal is DENIED.

Dated at Portland, Maine this 5th day of July, 2001.

Robert E. Crowley
Justice, Superior Court

Date Filed _01-03-01_     _Cumberland_     Docket No. _AP-01-01_

County

Action _Rule 80B Appeal_

Robert J. Springborn           Town of Falmouth and
Fairway Villas, Inc.

vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| John Bannon, Esq.<br>P. O. Box 9785<br>Portland, Maine 04104 | CATHERINE R. CONNORS, ESQ.<br>ONE MONUMENT SQUARE (Fairway Villas, Inc<br>PORTLAND, MAINE 04101<br>791-1100<br><br>AMY K. TCHAO, ESQ.<br>P.O. BOX 9781 (Town of Falmouth)<br>PORTLAND, MAINE 04104-5081<br>772-1941 |