MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:       2025 ME 85
Docket:         BCD-23-395
Argued:         June 6, 2024
Decided:        August 26, 2025

Panel:          STANFILL, C.J., and MEAD, CONNORS, LAWRENCE, and DOUGLAS, JJ.

## THE VILLAGE AT OCEAN'S END CONDOMINIUM ASSOCIATION

v.

## SOUTHWEST HARBOR PROPERTIES LLC et al.

DOUGLAS, J.

[¶1] The Village at Ocean's End Condominium Association (the Association) appeals from a partial summary judgment, incorporated into a final judgment, entered by the Business and Consumer Docket (*McKeon, J.*) in favor of Southwest Harbor Properties LLC; Howland Real Estate, LLC; and Jeffrey Howland, in which the court concluded that Southwest Harbor Properties properly withdrew real estate from the condominium and conveyed the property to Howland Real Estate.

[¶2] The Association argues that the conveyance to Howland Real Estate was invalid and must be set aside because the Maine Condominium Act, 33 M.R.S. §§ 1601-101 to 1604-118 (2025) (the Act), prohibited Southwest Harbor Properties, a successor declarant, from withdrawing common element

2

land from the condominium, except as part of a unit sale, without the written consent of at least 80% of the unit owners.  The Association also claims that it is entitled to attorney fees incurred in this appeal.[1]  We affirm the judgment and reject the Association's attorney fees request.

## I.  BACKGROUND

[¶3]  The following facts are drawn from the summary judgment record and are not disputed by the parties.

[¶4]  The Village at Ocean's End Condominium was established on May 5, 2009, by Jeffrey Crafts when he, through Village at Ocean's End LLC as the original declarant, executed and recorded a declaration entitled "Declaration of the Village at Ocean's End Condominium."  The condominium consists of free-standing homes (the units) located on the upland side of Route 102 in Southwest Harbor.  At the time the condominium was established, Crafts also

---

[1] The Association also argues that the withdrawal of the common element land and its subsequent lease back to the Association was a breach of the defendants' fiduciary duty owed to the Association. However, all claims related to the lease were settled in the agreement read into the record on July 18, 2023, thereby foreclosing on appeal any arguments related to the lease.  Therefore, the only portion of the Association's claim for breach of fiduciary duty that remains concerns the withdrawal of the parcel of land at issue from the condominium.  The Association conceded at oral argument that if the withdrawal of the property complied with the Act, then there was no breach of fiduciary duty.  For the reasons set forth in this opinion, the transfer of the shorefront parcel was a valid exercise of the declarant's development rights, and there was no breach of any alleged fiduciary duty.

owned through a separate entity a .68-acre shoreland parcel located across, and on the water side of, Route 102.

[¶5] In the declaration, Crafts expressly reserved "development rights" and "special declarant rights" in both the upland property and the .68-acre shorefront parcel. The development rights included the ability to add land to or withdraw land from the condominium.[2] At no point were there any modifications to the development rights or special declarant rights.

[¶6] Crafts was unsuccessful in his efforts to develop the condominium. In December 2012, Crafts and his lender, The First, N.A., came to a workout agreement. The workout required Crafts to (1) exercise his development rights to add the .68-acre shorefront parcel to the condominium and reserve

---

[2] The original declaration provided, in relevant part:

Section 4.1 Development Rights.

The Declarant reserves to itself, and for the benefit of itself and its successors and assigns, the Development Rights to create additional units up to a total of forty (40) units, common elements or limited common elements within the Condominium, to convert units into common elements, to convert common elements into units, to add land to the Condominium or *to withdraw land from the Condominium* and to modify, extend or relocate roads, paths, utility lines and common driveways in the Condominium . . . . Development Rights and Special Declarant rights must be exercised within twenty (20) years from the date of recordation of this Declaration provided that the period of the Declarant control of the Association as permitted by Section 1603-103(d) of the Maine Condominium Act, and as reserved in section 4.2 below, shall terminate in accordance with the provisions thereof.

(Emphasis added.)

4

development rights on that parcel, and (2) convey the condominium and the associated development rights to The First.  Crafts conveyed the shorefront parcel to the condominium by a duly recorded third amendment to the declaration,[3] conveyed the condominium to The First by a deed in lieu of foreclosure, and recorded an amended plat showing the conveyance.

[¶7]  In August 2013, The First conveyed the condominium and the associated development rights to Southwest Harbor Properties by quitclaim deed.[4]  Through this transaction, Southwest Harbor Properties became the successor declarant of the condominium.

---

[3] The third amendment to the declaration provided in relevant part:

> 1.  Addition of Land.  The [shorefront parcel] in Southwest Harbor, Hancock County, Maine, is hereby added to the Village at Ocean End's Condominium, subject to the declarant's rights to create additional units thereon and all the other rights set forth in the Declaration, just as though said parcel had originally been described as part of the condominium[.]
>
> . . .
>
> 2.  Revised Condominium Plat.  An Amended and Restated plat of the condominium dated December 12, 2012, has been recorded contemporaneously herewith.

Shortly after the third amendment was recorded, a fourth amendment was recorded. That amendment is not relevant to this appeal.

[4] The deed provided, in relevant part, that the property was conveyed

> TOGETHER WITH and SUBJECT TO the matters set forth in the Declaration of The Village at Ocean's End Condominium dated May 5, 2009 and
>
> . . .

[¶8] Beginning in September 2013, in accordance with its business plan, Southwest Harbor Properties withdrew the shorefront parcel from the condominium by a duly recorded fifth amendment to the declaration, recorded a second amended plat for the condominium indicating that the shorefront parcel would be conveyed to Howland Real Estate, and conveyed the property to Howland Real Estate.[5] Southwest Harbor Properties did not obtain the written consent of unit owners to withdraw the shorefront parcel from the condominium or to convey it to Howland Real Estate.

[¶9] In September 2014, Jeffrey Howland, as manager for Howland Real Estate and as manager for the Association (which was still under declarant control), executed an agreement between Howland Real Estate and the Association to lease the shorefront parcel for a term of ninety-nine years with rent to be paid at a rate of $50 per month per declared unit, increasing at 3%

---

[Southwest Harbor Properties] assumes[] all of [The First's] right, title, and interest in and to all of the 'Development Rights' and 'Special Declarant Rights', with respect to [the condominium] or defined in the Maine Condominium Act . . . .

[5] Two of the instruments used in the transactions contained scrivener's errors that were subsequently corrected. The original, September 20, 2013, fifth amendment to the declaration mistakenly referred to "Village at Ocean's End, LLC" instead of "Southwest Harbor Properties, LLC," the successor declarant, but was corrected in April 2014 by the recording of a revised fifth amendment. The deed conveying the shorefront parcel mistakenly referred to "Howland Real Estate Properties, LLC" rather than "Howland Real Estate, LLC." This was amended by the recording of a corrective deed in May 2015. In December 2014, Southwest Harbor Properties recorded a third amended plat reflecting the conveyance to Howland Real Estate. Although these errors are referenced in the Association's brief, the Association does not contend, nor do we conclude, that they affected the issues addressed in this appeal.

6

annually. The Association ratified and adhered to the lease, including after the Association had elected members to the executive board, until the lease was terminated by mutual agreement in March 2023.

[¶10] In August 2021, the Association filed a six-count complaint in the Superior Court against Southwest Harbor Properties, Howland Real Estate, and Jeffrey Howland. In Count 1, the Association sought a declaratory judgment that the withdrawal of the shorefront parcel was void because Southwest Harbor did not obtain approval of 80% of the unit owners.[6] In Count 2, the Association challenged the validity of the lease of the shorefront parcel. In Counts 3 through 6, the Association alleged various claims related to the governance of the condominium. The defendants answered, denying the allegations and asserting various defenses. The defendants brought a six-count counterclaim that closely mirrored the Association's complaint. The matter was transferred to the Business and Consumer Docket over the Association's objection.

[¶11] In December 2022, the Association moved for partial summary judgment, asserting that Southwest Harbor Properties had breached its

---

[6] The Association additionally alleged in Count 1 that the defendants breached their fiduciary duty to the Association by engaging in self-dealing, arguing that the defendants "stole" the shoreline parcel only to lease it back to the Association.

fiduciary duty to the Association and had violated the Act by withdrawing the shorefront parcel without the approval of 80% of the unit owners. In the same motion, the Association also moved for summary judgment on its claim that the lease of the shorefront parcel was void, requesting reimbursement for its lease payments and attorney fees.

[¶12] The defendants opposed the Association's motion and filed a cross-motion for partial summary judgment, contending that the withdrawal of the shorefront parcel was a valid exercise of Southwest Harbor Properties' development rights and that the subsequent lease of that parcel by Howland Real Estate was valid and enforceable. The defendants sought recovery of attorney fees and costs, as well as payment for unpaid rent, late fees, and interest.

[¶13] In March 2023, the court heard argument on the motions. On April 12, 2023, the court entered an order denying the Association's motion and granting the defendants' motion on the issue of Southwest Harbor Properties' withdrawal of the shorefront property but denying the defendants' motion on the issue of whether any breach of fiduciary duty occurred concerning the lease. The court concluded as a matter of law that Southwest Harbor executed the

8

withdrawal of the shorefront property in accordance with the declaration and the Act.  The court did not address the parties' requests for attorney fees.

[¶14]  The court set the remaining claims for trial in July 2023.  On the morning of the trial, the parties reached a settlement agreement, which was read into the record with the court's assistance.  The result of the settlement agreement was that

- the partial summary judgment on Count 1 would be entered as a final judgment with the understanding that if the Association were successful on appeal to the Law Court, there would be no further proceedings except to the extent necessary to convey the shorefront property to the Association;

- all remaining claims in the complaint and counterclaim were dismissed with prejudice;

- Southwest Harbor would pay the Association $40,000 to settle all claims;

- the lease was terminated;

- beginning in August 2023, the Association would assess all declared units at $250 per unit and all declared units could vote; and

- the parties would execute a mutual release.

The court summarized the parties' agreement regarding the Association's right to appeal as follows:

> There will be a full release of both parties, a mutual release accepting the plaintiff's ability to appeal the [c]ourt's decision on summary judgment with respect to the shorefront parcel.
>
> Therefore because everything's being released, the assumption is that when the shorefront parcel matter goes up to the [L]aw [C]ourt, if this [c]ourt's decision is reversed, there'd be no further proceedings except to the extent it's necessary to reconvey the shorefront parcel to the association.

[¶15]  When the parties attempted to memorialize the settlement agreement, a dispute arose, after which the parties each filed a motion to enforce the agreement.  On October 3, 2023, after determining that the parties had entered into an enforceable agreement, the court entered a final judgment. In its final judgment, the court incorporated its partial summary judgment dated April 12, 2023, regarding Count 1 of the Association's complaint and Count 1 of the defendants' counterclaim, and dismissed the remaining counts with prejudice, stating that the transcribed settlement agreement constituted the judgment on those claims.  The Association timely appealed.

## II.  DISCUSSION

[¶16]  The Association contends that once the shorefront parcel was added to the condominium as a common element, 33 M.R.S. § 1603-112(a) required that Southwest Harbor Properties obtain approval of 80% of the unit owners before withdrawing the parcel.  Based on our reading of the Maine

10

Condominium Act, the relevant condominium documents, including the declaration and amended declarations, and common law, we determine otherwise. We also reject the Association's claim that it is entitled to an award of attorney fees regardless of whether it is the prevailing party on appeal because the settlement agreement reached by the parties precludes such a claim. We address each argument in turn.

**A.  A declarant's properly reserved development rights are not subject to the provision in section 1603-112(a) requiring the approval of 80% of unit owners.**

[¶17]  "The interpretation of a statute is a legal issue that we review de novo." *Kinderhaus N. LLC v. Nicolas*, 2024 ME 34, ¶ 36, 314 A.3d 300 (quotation marks omitted). "When interpreting a statute, our single goal is to give effect to the Legislature's intent in enacting the statute." *Bocko v. Univ. of Me. Sys.*, 2024 ME 8, ¶ 11, 308 A.3d 203 (quotation marks omitted). "We begin by examining the statute's plain language, considering the entire statutory scheme to achieve a harmonious result." *Cassidy Holdings, LLC v. Aroostook Cnty. Commr's*, 2023 ME 69, ¶ 6, 304 A.3d 259 (quotation marks omitted).

[¶18]  The Maine Condominium Act provides a comprehensive legal framework governing, among other things, the creation (and termination),

ownership, and management of condominiums in Maine.[7] *See generally* 33 M.R.S. §§ 1601-101 to 1604-118. A condominium is created when the declarant records a declaration "executed in the same manner as a deed, by all persons whose interests in the real estate will be conveyed to unit owners." 33 M.R.S. § 1602-101(a). The declaration must describe the real estate included in the condominium and contain a description of any "development rights" or "special declarant rights" that have been reserved by the declarant, together with a description of the real estate to which those rights apply and a time limit within which each right must be exercised. 33 M.R.S. § 1602-105(a)(3), (8).

[¶19] "Development rights" are defined as "any right or combination of rights reserved by a declarant in the declaration to add real estate to a condominium; to create units, common elements or limited common elements within a condominium; to subdivide units or convert units into common elements; or *to withdraw real estate from a condominium*." 33 M.R.S

---

[7] The Act is divided into four articles. Article 1 contains general provisions, including definitions of terms, applicable throughout the statute. Article 2 addresses the creation, alteration, and termination of a condominium. Article 3 governs the management of the condominium. Article 4 contains provisions protecting condominium purchasers. The Act defines "condominium" as "real estate, portions of which are designated for separate ownership and the remainder of which is designated for common ownership" under a duly recorded declaration. 33 M.R.S. § 1601-103(7) (2025).

§ 1601-103(11) (emphasis added).  The Act enumerates the steps a declarant must take when exercising a reserved development right, including that the declarant record an amendment to the declaration and record either new plats and plans or an affidavit averring that previously recorded plats and plans are conforming.  33 M.R.S. § 1602-109 (setting out requirements for plats and plans); 33 M.R.S. § 1602-110(a) (governing the exercise of development rights); 33 M.R.S. § 1602-117 (governing amendments to a declaration).

[¶20]  There is no dispute that the right to withdraw the shorefront parcel was reserved in the amended declaration, *see id.* § 1602-110(b), or that Southwest Harbor Properties complied with section 1602-110(a) in exercising its development rights when it withdrew the shorefront parcel.  The question presented here is whether Southwest Harbor Properties, as the successor declarant exercising its development rights, was required to obtain unit-owner approval pursuant to section 1603-112(a) or otherwise under the Act[8] in order to withdraw the shorefront parcel from the condominium.  It was not.

_____

8  The Association also contends that by an express cross-reference to section 1603-112, a provision in 33 M.R.S. § 1602-107 (2025) requires unit-owner approval here.  Section 1602-107(e) provides that "common elements are not subject to partition, and any purported conveyance, encumbrance, judicial sale or other voluntary or involuntary transfer of an undivided interest in the common elements made without the unit to which that interest is allocated is void, except as permitted in section 1603-112."  The Association argues that a common element could not be "partitioned," or "divided up and transferred to anyone unless underneath a unit that was sold."  This misreads the import of the statute.  The common element at issue here is not being "partitioned" or "divided up and transferred" to a third party and is not "underneath [any] unit" being sold.  Neither

[¶21]  Section 1603-112(a) provides in relevant part:

Portions of the common elements may be conveyed or subjected to a security interest *by the association* if persons entitled to cast at least 80% of the votes in the association, including 80% of the votes allocated to units not owned by a declarant, or any larger percentage the declaration specifies, agree to that action . . . . Proceeds of the sale are an asset of the association.

(Emphasis added.)

[¶22]  By its plain terms, section 1603-112(a) applies to conveyances of any portion of the common elements *by the Association*, not the declarant exercising development rights reserved in the original declaration.  The Act allows declarants to reserve development rights, including the ability to withdraw land from a condominium, without any mention of section 1603-112(a).  *Id.* § 1602-110 (governing the exercise of development rights).

[¶23]  Here, the declarant properly reserved development rights for twenty years.  The shorefront parcel was set forth as a parcel of land over which the declarant reserved development rights.  Those rights were transferable because they were reserved for the declarant "and for the benefit of itself and its successors and assigns." The development rights were conveyed to The First

---

section 1602-107 generally nor section 1602-107(e) specifically pertains to a declarant's proper exercise of development rights that are authorized by, and executed consistent with, a condominium declaration.

14

in the deed in lieu of foreclosure. The First conveyed the rights to Southwest Harbor Properties through a quitclaim deed. As the successor declarant, Southwest Harbor Properties exercised its development right to withdraw the shorefront parcel from the condominium within the twenty-year period. It then recorded amended plats reflecting the withdrawal and conveyed the shorefront parcel to Howland Real Estate.

[¶24] In this sequence of events, development rights in the shorefront parcel were properly reserved and transferred in accordance with the Act and the unit owners received their interest in the condominium subject to the declarant's development rights. The provision in section 1603-112(a) requiring the approval of 80% of unit owners played no role in the conveyance to Howland Real Estate. *See id.* § 1602-110(a)-(b) (laying out, without any cross-reference to section 1603-112, the procedure for a declarant to exercise its development rights).

[¶25] Although we need look no further than the statute's plain language, we note that the structure of the Maine Condominium Act; the provisions of the Uniform Condominium Act, on which Maine's Act is based; and our common law all support the legality of Southwest Harbor Properties' withdrawal and conveyance of the shorefront parcel. The structure of Maine's Condominium

Act places section 1603-112(a) (requiring the approval of 80% of unit owners for the Association to convey a common element) in article three of the Act, which is titled "Management of the Condominium," but section 1602-110(a)-(b) (discussing the exercise of development rights) appears in article two, which is titled "Creation, Alteration and Termination of Condominiums." Although we do not rely on abstracts like titles to inform the meaning of a statute, *see Kneizys v. Fed. Deposit Ins. Corp.*, 2023 ME 20, ¶ 15, 290 A.3d 551, we do "consider the statute's specific language in the context of the whole statutory scheme and give due weight to design, structure, and purpose as well as to aggregate language" to avoid absurd or illogical results. *Good v. Town of Bar Harbor*, 2024 ME 48, ¶ 19, 319 A.3d 1030 (quotation marks omitted).

[¶26]  Notably, the requirement for approval of 80% of the unit owners appears in the Act's management section, as opposed to its creation section, with no cross-reference requiring unit-owner approval for a declarant conveying land according to properly reserved development rights.  This structure implies that unit owners possess an interest in the common elements of a condominium subject to the declarant's development rights—if reserved—during the period in which the development rights are effective.  *See* 33 M.R.S. § 1602-110(a).  To conclude otherwise would provide unit owners the power

to prevent conveyances necessary for the development of a condominium, an illogical result avoided by the statute's plain language. *See Good*, 2024 ME 48, ¶ 19, 319 A.3d 1030 (stating that the Law Court interprets a statute's plain language "to avoid absurd, illogical, or inconsistent results" (quotation marks and citation omitted)); 33 M.R.S. § 1603-112(a) (requiring approval of 80% of unit owners for conveyances made by the association but not for those made by the declarant).

[¶27]   Moreover, the Uniform Law Commission's comment to section 2-110 of the Uniform Condominium Act notes that

> [i]n the event of a withdrawal under this section, however, the declarant is in fact the subdivider *because of the declarant's unique interest in and control over the real estate, even though the real estate, for title purposes, is a common element until withdrawn*.

Unif. Condo. Act § 2-110 cmt. 4 (Unif. L. Comm'n 2017) (emphasis added).  The Uniform Condominium Act recognizes that "[t]he reservation and exercise of development rights is and must be closely coordinated with financing for the project.  As a result, lender review and control of that process is common."  Unif. Condo. Act § 2-110 cmt. 2.  This close coordination is evidenced here by the workout agreement between the original declarant and its lender, The First.

[¶28]  The declarant's unique interest and control over the real estate in a condominium—maintained through the reservation of development rights—

permits the declarant "a high degree of flexibility to respond to changing economic opportunities, or to meet the space requirements of prospective purchasers. For example, the [development rights] allow a declarant to commit more land to the condominium in the event of success. On the other hand, they allow a declarant to withdraw real estate from the project and devote it to other uses should original expectations not be realized." *Am. Condo. Ass'n, Inc. v. IDC, Inc.*, 870 A.2d 434, 437 (R.I. 2005);[9] *see also* Unif. Condo. Act § 1-103 cmt. 8 (Unif. L. Comm'n 1980) (discussing the right to withdraw property from a condominium).

[¶29] In allowing the flexibility necessary to develop the declared condominium through properly reserved rights, the Act creates a statutory and contractual burden on the property interests of the unit purchasers, i.e., the development rights reserved in the declaration are enforceable against the unit owners' interest in the common elements and may affect their rights if exercised. *See* 33 M.R.S. § 1602-105(a)(8) (discussing the requirements for

---

[9] Both Maine and Rhode Island's Condominium Acts are based on the Uniform Condominium Act, and Maine's Act contains a section instructing courts to apply and construe the Act "so as to effectuate its general purpose to make uniform the law with respect to the subject of this Act among states enacting it." 33 M.R.S. § 1601-110 (2025); *see also Song v. Lemoine*, 334 A.3d 958, 963 (R.I. 2025) (stating that Rhode Island adopted a version of the Uniform Condominium Act); 1 Cowan & Scannell, *Maine Prac., Real Estate Law & Prac.* § 4:15 (2d ed.) (the Maine Condominium Act was adopted after two years of study of the Uniform Condominium Act).

reserved development rights); *Alexander v. Fairway Villas, Inc.*, 1998 ME 226, ¶ 8, 719 A.2d 103 ("[T]he incorporation of the Declaration into the lot owners' deeds created enforceable contractual rights between the lot owners and [the developer]."). This contractual and statutory burden is similar to a defeasible fee where the conveyor of land retains a right of re-entry.[10] *See Babb v. Rand*, 345 A.2d 496, 498 (Me. 1975) ("[A fee simple subject to condition subsequent] is subject to a power in the grantor, called the right of re-entry, to terminate the estate on the happening of a specified event such as, here, a breach of the condition."); *Whipple v. Gilpatrick*, 19 Me. 427, 429 (1841) (discussing a defeasible estate created by a conditional conveyance); *Defeasible*, Black's Law Dictionary (12th ed. 2024) (defining "defeasible" as meaning "capable of being annulled or avoided").

[¶30] Statutory development rights and the common law right of re-entry differ, however, in that the statutory development rights do not require the occurrence of an event or a condition to trigger the right of re-entry.[11] *Compare Babb*, 345 A.2d at 498 (stating that an interest held in fee

---

[10] The Maine Condominium Act specifically recognizes the applicability of general principles of real estate and contract law, providing, "The principles of law and equity, including . . . the law of real property and the law relative to capacity to contract . . . supplement the provisions of this Act, except to the extent inconsistent with this Act." 33 M.R.S. § 1601-108 (2025).

[11] The Massachusetts Supreme Judicial Court has described development rights reserved by the declarant as creating a defeasible fee interest in the common elements of a condominium. *Queler v.*

simple subject to a condition subsequent is subject to a power in the conveyor, called the right of re-entry, to terminate the estate following the occurrence of a specified event), *with* 33 M.R.S. § 1602-110(a) (providing that a declarant exercising a development right must amend the condominium declaration and update the plats and plans but without requiring a specified event to trigger the development right). Thus, the unit owners' interest in the common elements burdened by the reserved development rights is defeasible until the development rights have been exercised or the period for doing so has expired, *see Queler v. Skowron*, 780 N.E.2d 71, 79 (Mass. 2002), and therefore section

---

*Skowron*, 780 N.E.2d 71, 79 (Mass. 2002) ("Because the declarants submitted a defeasible fee to [the condominium], retaining in the master deed a separate interest in the unphased portions of the [condominium], which could vest on the occurrence of a specified condition, they were not bound by the removal provisions of § 19 as if they had submitted to [the condominium] an estate of fee simple absolute."). In *Queler* the master deed (similar to the declaration here) "provided that if [the deed] had not been amended to add all authorized phases by the time the declarants' phasing rights terminated, title to any portion of the [condominium] land that remained undeveloped would revest in the declarants or their successors or assigns." *Id.* at 73–74. Because the master deed in *Queler* contained language revesting the undeveloped portion of the condominium upon the occurrence of a specified event, i.e., the expiration of the declarants' development rights, it conveyed a defeasible fee that automatically revested the land in the declarant. *Id.* at 76, 79. Here, however, the declaration did not automatically revest the property upon the occurrence of a stated event. Rather, it reserved development rights in accordance with the Maine Condominium Act that effectively constitute a burden on the property interests of the unit owners until the time for exercising those rights expires. *See* 33 M.R.S. § 1601-103(11); *Am. Condo. Ass'n, Inc. v. IDC, Inc.*, 870 A.2d 434, 437 (R.I. 2005).

1603-112(a) does not apply to the withdrawal and conveyance of the shorefront parcel.

**B.    The Association is not entitled to attorney fees.**

[¶31]  The Association argues that it is entitled to attorney fees incurred since entering into the parties' settlement agreement on July 18, 2023.  This argument is foreclosed by the parties' agreement, which limited the scope of review on appeal to the withdrawal of the shorefront parcel.  When memorializing the agreement on the record, the Superior Court stated,

> There will be a full release of both parties, a mutual release accepting the plaintiff's ability to appeal the [c]ourt's decision on summary judgment with respect to the shoreline parcel.
>
> Therefore because *everything's being released*, the assumption is that when the shoreline parcel matter goes up to the [L]aw [C]ourt, if this [c]ourt's decision is reversed, *there'd be no further proceedings except to the extent it's necessary to reconvey the shoreline parcel to the association*.
>
> . . .
>
> [Counsel for the Association]: The plaintiffs are in agreement with the terms that you specified.
>
> [Counsel for Southwest Harbor Properties et al.]: Defendants are as well.

(Emphasis added.)  The parties' settlement agreement allows the Superior Court on remand to address only the conveyance of the shorefront parcel.  The

Association's claim for attorney fees was released when the agreement was placed on the record in July 2023.[12]

The entry is:

Judgment affirmed.

---

Russell A. Kelm, Esq. (orally), Law Offices of Russell A. Kelm, Southwest Harbor and Columbus, Ohio, for appellant The Village at Ocean's End Condominium Association

Michael D. Traister, Esq., (orally) and Nicholas J. Bernate, Esq., Murray, Plumb & Murray, Portland, for appellees Southwest Harbor Properties LLC, Howland Real Estate, LLC, and Jeff Howland

Business and Consumer Docket docket number CIV-2022-11
FOR CLERKS REFERENCE ONLY

---

[12] There is no other basis for awarding the Association attorney fees. The authority for an award of attorney fees must be based on (1) the contractual agreement of the parties; (2) clear statutory authority; or (3) the court's inherent authority to sanction egregious conduct in a judicial proceeding. *See Sebra v. Wentworth*, 2010 ME 21, ¶ 17, 990 A.2d 538; *Baker v. Manter*, 2001 ME 26, ¶¶ 12, 17, 765 A.2d 583. Although a court may also award attorney fees for certain kinds of tortious conduct, such as a breach of fiduciary duty, *Murphy v. Murphy*, 1997 ME 103, ¶ 15, 694 A.2d 932, here the Association's claim for breach of fiduciary duty is foreclosed by the parties' settlement agreement and our decision on appeal. *See supra* n.1. Contrary to the Association's claim, the Maine Condominium Act, 33 M.R.S. § 1603-111 (2025), does not entitle it to an award of attorney fees. Section 1603-111 applies to third-party tort or contract claims and provides a condominium association or unit owner a right to be indemnified for wrongs that occurred during a period of declarant control and for which the declarant could have defended; that is clearly not the case here. Finally, there is no basis under the appellate rules for awarding attorney fees. *See* M.R. App. P. 13(f) (providing that we may impose sanctions, including an award of attorney fees, if it is determined that "an appeal, motion for reconsideration, argument, or other proceeding . . . is frivolous, contumacious, or instituted primarily for the purpose of delay").